# FEDERAL ELECTION COMMISSION *v.* DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE ET AL.

No. 80–939.   Argued October 6, 1981—Decided November 10, 1981*

---

*Together with No. 80–1129, *National Republican Senatorial Committee* v. *Democratic Senatorial Campaign Committee et al.,* also on certiorari to the same court.

WHITE, J., delivered the opinion for a unanimous Court. STEVENS, J., filed a concurring opinion, *post*, p. 43.

*Charles N. Steele* argued the cause for petitioner in No. 80–939. With him on the brief was *Kathleen Imig Perkins. Jan W. Baran* argued the cause and filed a brief for petitioner in No. 80–1129.

*Robert F. Bauer* argued the cause and filed a brief for respondent Democratic Senatorial Campaign Committee.

JUSTICE WHITE delivered the opinion of the Court.

The Federal Election Campaign Act of 1971, 86 Stat. 11, as amended, 2 U. S. C. § 431 *et seq.* (1976 ed. and Supp. IV), limits the contributions that may be made to candidates or political committees in an election for federal office. One provision of the Act, § 441a(d), authorizes limited expenditures by the national and state committees of a political party in connection with a general election campaign for federal office. After authorizing such expenditures, which otherwise would be impermissible,[1] the section specifies the amount a

---

[1] Expenditures by party committees are known as "coordinated" expenditures and are subject to the monetary limits of § 441a(d). See 6 FEC Record, No. 11, p. 6 (Nov. 1980). Party committees are considered in-

national committee may spend in connection with a Presidential campaign, § 441a(d)(2), and limits the amount that national and state committees of a political party may spend in connection with the general election campaign of a candidate for the Senate or the House of Representatives, § 441a(d)(3). In this litigation we examine whether § 441a(d)(3) is violated when a state committee of a political party designates the national senatorial campaign committee of that party as its agent for the purpose of making expenditures allowed by the Act.

I

The National Republican Senatorial Committee (NRSC) is a political committee organized specifically to support Republican candidates in elections for the United States Senate. Although the NRSC is authorized by § 441a(h) to contribute up to $17,500 to a candidate for election to the Senate, it is not given authority by § 441a(d) to make expenditures on behalf of such candidates, and it is the position of the Federal Election Commission, the agency charged with enforcement of the Act, that the NRSC may not do so on its own account. The Commission, however, has permitted the NRSC to act as the agent of national and state party committees in making expenditures on their behalf.

capable of making "independent" expenditures in connection with the campaigns of their party's candidates. The Commission has, by regulation, forbidden such "independent" expenditures by the national and state party committees, 11 CFR § 110.7(B)(4) (1981), and has indicated in this litigation that the congressional campaign committees fall within that prohibition. See Brief for Petitioner Federal Election Commission in No. 80–2074 (CADC), p. 10, n. 5 ("[p]arty committees . . . are deemed incapable of making independent expenditures"); Brief for Petitioner in No. 80–939, p. 38 ("NRSC is a party committee"). Thus, as the Commission admits: "Absent § 441a(d), party committees could make no expenditures whatsoever in connection with the Congressional campaigns of their party's candidates." Brief for Petitioner Federal Election Commission in No. 80–2074 (CADC), p. 10, n. 5.

In February 1977, in response to an inquiry submitted late in 1976, the Commission issued an Advisory Opinion, 1976–108, that it would be consistent with the Act for the NRSC to spend its own funds in support of congressional candidates as the designated agent of the Republican National Committee (RNC). In April 1977, the Commission issued a regulation, 11 CFR § 110.7(a)(4) (1981), which provides that the national party committees may make expenditures in the general election campaign for President "through any designated agent, including state and subordinate party committees." On the basis of this regulatory authority, the National Committee of the Democratic Party entered into an agreement specifying the Democratic Senatorial Campaign Committee (DSCC) as its agent for the expenditure of authorized funds in Senate campaigns. In 1978, certain state Republican Party committees designated the NRSC as their agent for § 441a(d)(3) expenditure purposes.[2] Complaints were filed with the Commission challenging this practice as inconsistent with the Act. In dismissing these complaints, the Commission twice ruled by unanimous votes that the agency arrangements were not forbidden by the Act. *In re National Republican Senatorial Committee,* Federal Election Commission Matter Under Review (MUR) 780 (Jan. 19, 1979); *In re National Republican Senatorial Committee,* Federal Election Commission MUR 820 (June 17, 1979). In 1980, certain state committees again designated the NRSC as their agent, and on May 19, the DSCC filed its complaint with the Commission asserting that the NRSC's agreements with the state committees were contrary to § 441a(d)(3). The complaint did not challenge the contemporaneous agency agreement under which the NRSC acted as the agent of the RNC in connection with the latter's expenditures under § 441a(d).

---

[2] In the 1978 senatorial elections, the NRSC spent a total of $2,770,995 under the combined spending authority of the national and state party committees. Jt. App. in No. 80–2074 (CADC), p. 105.

After considering the report of its General Counsel, the Commission unanimously dismissed the complaint, concluding that there was "no reason to believe" that the agreements violated the Act.

The DSCC petitioned for review in the District Court for the District of Columbia pursuant to § 437g(a)(8).[3] That court granted the Commission's motion for summary judgment, concluding that the decision of the Commission was not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Democratic Senatorial Campaign Committee* v. *Federal Election Comm'n*, No. 80–1903 (DC Aug. 28, 1980) (reprinted at App. to Pet. for Cert. of NRSC B4). On appeal, the Court of Appeals for the District of Columbia Circuit granted the NRSC leave to intervene and reversed the judgment of the District Court after concluding that the "plain language of Section 441a(d)(3) precludes" the agency agreements between state committees and the NRSC. 212 U. S. App. D. C. 374, 383, 660 F. 2d 773, 782. We granted the petitions for certiorari filed by the Commission and the NRSC, 450 U. S. 964 (1981), and we now reverse the judgment of the Court of Appeals.

## II

Although the Court of Appeals first addressed whether and to what extent it should defer to the Commission's construction of the Act, 212 U. S. App. D. C., at 377, 660 F. 2d, at 776, this discussion and the conclusion that little or no deference was due the Commission were pointless if the court was correct that the agency agreements violated the plain language of the Act as well as the statutory purposes revealed by the legislative history. The interpretation put

---

[3] This section provides that "[a]ny party aggrieved" by the Commission's dismissal of a complaint may petition the United States District Court for the District of Columbia which "may declare that the dismissal of the complaint or the action, or the failure to act, is contrary to law" and order the Commission to conform with the court's declaration.

on the statute by the agency charged with administering it is entitled to deference, *NLRB* v. *Bell Aerospace Co.*, 416 U. S. 267, 275 (1974); *Udall* v. *Tallman*, 380 U. S. 1, 16 (1965), but the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. *SEC* v. *Sloan*, 436 U. S. 103, 118 (1978); *FMC* v. *Seatrain Lines, Inc.*, 411 U. S. 726, 745–746 (1973); *Volkswagenwerk* v. *FMC*, 390 U. S. 261, 272 (1968); *NLRB* v. *Brown*, 380 U. S. 278, 291 (1965). Accordingly, the crucial issue at the outset is whether the Court of Appeals correctly construed the Act. For the reasons that follow, we disagree with the Court of Appeals. As we understand the Act and its legislative history, § 441a(d)(3) does not foreclose the use of agency agreements. The Commission thus acted within the authority vested in it by Congress when it determined to permit such agreements.

Section 441a(d)(3) provides as follows:

> "The national committee of a political party, or a State committee of a political party, including any subordinate committee of a State committee, may not make any expenditures in connection with the general election campaign of a candidate for Federal office in a State who is affiliated with such party which exceeds—
>
> "(A) in the case of a candidate for election to the office of Senator, or of Representative from a State which is entitled to only one Representative, the greater of—
>
> "(i) 2 cents multiplied by the voting age population of the State (as certified under subsection (e) of this section); or
>
> "(ii) $20,000; and
>
> "(B) in the case of a candidate for election to the office of Representative, Delegate, or Resident Commissioner in any other State, $10,000."

It is evident from its terms that the section does not in so many words forbid the state or national party to designate agents for expenditure purposes. This much is common ground. The Court of Appeals, however, held that because § 441a(d)(3) permits expenditures in congressional campaigns to be made by national and state committees of the political parties, including subordinate committees of the latter, and because the NRSC was neither a national committee[4] nor a state committee, it should not be permitted to make expenditures under any arrangement "by which the special authority of a named entity is transferred to another." 212 U. S. App. D. C., at 380, 660 F. 2d, at 779. Obviously, § 441a(d)(3) does not permit the NRSC to make expenditures in its own right. But, contrary to the Court of Appeals, it does not follow that the NRSC may not act as an agent of a committee that is expressly authorized to make expenditures. In the nature of things, a committee must act through its employees and agents, as the Court of Appeals recognized, and nothing in the statute suggests that a state committee may not designate another committee to be its alter ego and to act in its behalf for the purposes of § 441a(d)(3). To foreclose such an arrangement on the grounds that the named agent is not one of the authorized spenders under § 441a(d)(3) would foreclose all agency agreements regardless of the identity of the agent and regardless of the terms of the agency.[5] Nothing in the Act demands that the choices available to the state committee should be so severely restricted.

---

[4] The RNC, not the NRSC, is the "national committee" as defined by 2 U. S. C. § 431(14) (1976 ed., Supp. IV): "the organization . . . responsible for the day-to-day operation of such political party at the national level."

[5] The Court of Appeals' suggests that it is misleading to characterize the agreements as ones of "agency" because the state committees do not direct how funds are to be raised and spent. We do not understand the lack of such control to be inherent in these arrangements, nor dispositive in deciding whether such agreements can be made under the Act. See *infra*, at 41. See also n. 6, *infra*.

If the Court of Appeals is correct that any arrangement is forbidden by which an authorized committee empowers another to exercise its spending authority, then neither of the national committees could legally enter into agency relationships with its congressional campaign committees. Yet, both have regularly done so, and respondent DSCC does not challenge these arrangements. Indeed, the DSCC accepts the Commission's regulation, 11 CFR § 110.7 (1981),[6] as valid and interprets that regulation as authorizing the agency agreements which have existed between the parties' national committees and the Republican and Democratic Senatorial Campaign Committees.[7] Moreover, when the Commission, as required by law,[8] submitted the regulation to Congress, neither House expressed disapproval.

Despite this indication that Congress does not look unfavorably upon the NRSC's sharing in the spending authority

---

[6] The regulation, 11 CFR § 110.7(a)(1) (1981), allows the "national committee of a political party [to] make expenditures in connection with the general election campaign of any candidate for President . . . affiliated with the party," up to "an amount equal to 2 cents multiplied by the voting age population of the United States," the amount authorized by § 441a(d)(2). These expenditures may be made "through any designated agent, including State and subordinate committees." The regulation goes on to authorize the national committee to make expenditures on behalf of congressional and senatorial candidates of the party.

While the regulation directly authorizes transfers of spending authority only with respect to Presidential campaign expenditures, the significance of the regulation is that it clearly demonstrates that § 441a(d) expenditures do not have to be made directly by the committee specified in the statute.

[7] In its brief before the Court of Appeals, the DSCC expressly stated that it "does not challenge this regulation or the NRSC's role as agent of the Republican National Committee." See Brief for Appellant DSCC in No. 80–2074 (CADC), p. 20, n. 16.

[8] The Act requires that before prescribing any rule or regulation the Commission shall transmit the proposed rule and an accompanying statement to the Senate and the House. If neither House disapproves the proposed rule within 30 legislative days, the Commission may proceed to issue the rule. § 438(d).

of § 441a(d)(3), the Court of Appeals reads such disapproval into Congress' failure to explicitly provide for such arrangements. To bolster its argument, the court points to § 441a(h),[9] which directly authorizes the national party committees, including the Republican or Democratic Senatorial Campaign Committees, to contribute up to $17,500 to a senatorial candidate. This argument, if accepted, would only underline that the NRSC may not make additional expenditures on its own account. It does not answer the question whether a state committee may exercise its statutory spending authority by designating the NRSC as its agent for this purpose.[10]

Neither does the legislative history of the Act purport to disapprove agency arrangements. The Court of Appeals refers to the defeat of the Brock Amendment, which would have exempted congressional campaign committees such as the NRSC from the Act's expenditure limits.[11] 212 U. S. App. D. C., at 381, 660 F. 2d, at 780. But rejection of a proposal to permit congressional campaign committees to make expenditures in their own right does not necessarily affect their capacity to perform agency functions. Moreover, insofar as the intent of Congress is reflected in its failure to adopt a proposed amendment, a contrary—and indeed stronger—inference can be found in the rejection by the 96th Congress of an amendment that would have expressly

---

[9] Section 441a(h) authorizes the "Republican or Democratic Senatorial Campaign Committee, or the national committee of a political party, or any combination of such committees" to contribute "not more than $17,500" to a senatorial candidate.

[10] By its terms, the provision does not restrict a senatorial campaign committee from making expenditures on behalf of other committees.

[11] During the 1974 legislative debates, Senator Brock proposed an amendment that would have exempted congressional campaign committees from the expenditure limitations of the Act. 120 Cong. Rec. 9549–9551 (1974). The Senate initially adopted the amendment, but reversed itself five days later. *Id.*, at 10062–10064.

prohibited the movement of funds between state and national committees of a political party.[12]

It is clear enough to us without saying more that the statute does not expressly or by necessary implication foreclose the agency agreements at issue in this case. But neither does it expressly permit or require such agreements. If this were a direct enforcement action rather than the review of a decision by the administrative agency charged with the enforcement of the statute, it may be that a court could defensibly arrive at the conclusion that agency agreements of this kind should be forbidden. It may also be that the Commission could have construed the statute to forbid the agreements and that a court would have accepted such a construction by the agency. But that is not this case. The Commission, in dismissing the DSCC's complaint, has determined that agency agreements are not contrary to law and the question is whether the courts should defer to this judgment as a permissible construction of the Act or instead disregard the agency's view and proceed to construe the statute based on its own view of what would best serve the purpose and policy of the Act.

## III

The Court of Appeals determined that the Commission's construction of the Act was entitled to no deference whatso-

---

[12] Section 113 of H. R. 11315 would have prohibited any "movement of funds" between "the political committees of a national political party (including House and Senate congressional campaign committees of such party) and the political committees of a State committee of a political party . . . for the purpose of making contributions to, or expenditures on behalf of, any candidate for Federal office." H. R. 11315, 95th Cong., 2d Sess. (1978). The House rejected a rule for consideration of the bill, 124 Cong. Rec. 7872–7880 (1978). The basis for the rejection may be seen in various comments attacking the bill. Representative Stockman saw the proposed amendment as a "fundamental assault on . . . the continued meaningful role of our political parties." *Id.*, at 7875. Representative Mikva stated that he "deeply regret[ted] that the committee . . . saw fit to change the party financing." *Id.*, at 7876.

ever. While acknowledging that deference is often appropriately given to an agency's interpretation of its governing statute, the court refused to accord that deference here because of what it perceived as the lack of a reasoned and consistent explanation by the Commission in support of its decision. We agree that the thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given an agency's ruling. See *Adamo Wrecking Co.* v. *United States*, 434 U. S. 275, 287, n. 5 (1978); *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944). We do not agree, however, that the Commission failed to merit that deference in this case.

Initially, we note that the Commission is precisely the type of agency to which deference should presumptively be afforded. Congress has vested the Commission with "primary and substantial responsibility for administering and enforcing the Act," *Buckley* v. *Valeo*, 424 U. S. 1, 109 (1976), providing the agency with "extensive rulemaking and adjudicative powers." *Id.*, at 110. It is authorized to "formulate general policy with respect to the administration of this Act," § 437d(a)(9), and has the "sole discretionary power" to determine in the first instance whether or not a civil violation of the Act has occurred. 424 U. S., at 112, n. 153. Moreover, the Commission is inherently bipartisan in that no more than three of its six voting members may be of the same political party, § 437c(a)(1), and it must decide issues charged with the dynamics of party politics, often under the pressure of an impending election. For these reasons, Congress wisely provided that the Commission's dismissal of a complaint should be reversed only if "contrary to law." § 437g(a)(8).

The Commission's position on the question before us is clear. Since 1976, it consistently has adhered to its construction of § 441a(d)(3) as not forbidding intraparty agency agreements. The Commission has on three separate occasions, all by unanimous votes, rejected the DSCC's claim.

On each occasion the Commission followed the recommenda-
tion of its General Counsel. In his first report,[13] the General
Counsel emphasized the absence of any specific statutory
prohibition of the agency arrangements, and also relied on
§ 441a(a)(4),[14] which permits unlimited transfer of funds
among state and national political committees of the same
party. The second report,[15] without rejecting any of the ear-
lier arguments, also drew support from a Commission regula-
tion approving similar agency agreements between national
level committees.[16] The third report,[17] issued in this case,
added an analysis of § 441a(d)(3), reviewed the legislative his-
tory, and took note of the fact that Congress had recently
amended the Act with knowledge of the Commission's con-
struction of § 441a(d)(3) and had let that construction stand.
Unlike the Court of Appeals, we find the differences in em-
phasis in the three reports of little significance. All reach
the same conclusion, none rejects the arguments of the oth-
ers.[18] The Commission consistently has upheld the agency
agreements; the fact that Commission Counsel has had the
luxury of a number of sound arguments on which to base his
opinions does not detract from the deference due the agency's
interpretations.[19]

[13] See First General Counsel's Report, MUR 780 (Jan. 19, 1978).

[14] This section provides that the limitations on contributions to and by po-
litical committees found in §§ 441a(a)(1) and (2) "do not apply to transfers
between and among political committees which are national, State, district,
or local committees (including any subordinate committee thereof) of the
same political party."

[15] See First General Counsel's Report, MUR 820 (June 19, 1978).

[16] See 11 CFR § 110.7 (1981), *supra* n. 6.

[17] See First General Counsel's Report, MUR 1234 (July 11, 1980).

[18] The assertion by the Court of Appeals that the Commission has dis-
avowed the relevance of 11 CFR § 110.7 (1981) in its brief before that
court, 212 U. S. App. D. C. 374, 378, 660 F. 2d 773, 777, is belied by its
incorporation in the Commission's brief before this Court. See Brief for
Petitioner in No. 939, p. 35.

[19] Nor does the fact that the Commission, following its customary prac-

Hence, in determining whether the Commission's action was "contrary to law," the task for the Court of Appeals was not to interpret the statute as it thought best but rather the narrower inquiry into whether the Commission's construction was "sufficiently reasonable" to be accepted by a reviewing court. *Train* v. *Natural Resources Defense Council*, 421 U. S. 60, 75 (1975); *Zenith Radio Corp.* v. *United States*, 437 U. S. 443, 450 (1978). To satisfy this standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. *Ibid.; Udall* v. *Tallman*, 380 U. S., at 16; *Unemployment Compensation Comm'n* v. *Aragon*, 329 U. S. 143, 153 (1946). Under this standard, we think the District Court was correct in accepting the Commission's judgment.

As we have said, § 441a(d) does not expressly or by implication forbid agency agreements. Although the Court of Appeals and the DSCC are of the view that since the section specifically authorized only two committees—the national and state party committees—to make campaign expenditures, no other committee could make such expenditures either on its own account or on behalf of others. But the opposite reading makes equal sense: Congress, having written the statute so precisely, would have made clear that expendi-

---

tice, did not expressly adopt the General Counsel's report in announcing its decision "depriv[e] a reviewing court of any Commission record on which to base a deferential consideration." 212 U. S. App. D. C., at 378, n. 3, 660 F. 2d, at 777, n. 3. The Court of Appeals previously has held that the General Counsel's report to the Commission is sufficient to support the Commission's dismissal of a complaint. See *Hampton* v. *Federal Election Comm'n*, 2 Fed. Elec. Camp. Fin. Guide (CCH) ¶ 9036, pp. 50,439–50,440 (DC 1977), aff'd No. 77–1546 (CADC July 21, 1978). In this case, the General Counsel's report was made public simultaneously with the Commission's ruling. It was the third occasion on which the Commission followed the General Counsel's advice in this matter. Even without an express statement, it is sufficiently clear that the staff report provides the basis for the Commission's action.

tures by other committees, whether by agency or otherwise, were prohibited.

We also find acceptable the Commission's view that the agency agreements were logically consistent with § 441a (a)(4). That section authorizes the transfer of funds among national, state, and local committees of the same party. There can be little question but that the section applies to the National Republican Senatorial Committee, as that Committee is part of the Republican Party organization.[20] Under that provision, by using direct money transfers, instead of an agency agreement, the national committee could write a check to the state committee for the same amount that it would otherwise have spent directly under the agency agreement. That being so, we agree with the dissent below that the difference is "purely one of form, not substance." 212 U. S. App. D. C., at 386, 660 F. 2d, at 785.

Money transferred to the state committee presumably would be spent as the state committee decided. Agency

---

[20] Section 441a(a)(4) applies to "political committees which are national, state, district or local committees (including any subordinate committee thereof) of the same political party." The DSCC does not challenge the applicability of the transfer provision to national senatorial committees. At one point, the Court of Appeals refused to address the issue for that reason. See 212 U. S. App. D. C., at 382, 660 F. 2d, at 781 (the "issue was not joined before this court"). At another point, however, the court expressed "some doubt" whether § 441a(a)(4) encompasses congressional committees. Surely that doubt must be minimal in light of the broad scope of the statutory language, the fact that senatorial campaign committees are identifiable as part of their respective party. See Cong. Rec. 9552 (1974) (remarks of Sen. Baker), and the Congress' clear intent to include such committees within the scope of §§ 441a(a)(1)–(2), to which § 441a(a)(4) serves as an exception. See H. R. Conf. Rep. No. 94–1057, p. 58 (1976) ("the term 'political committee established or maintained by a national political party' includes the Senate and House Campaign Committees"). A committee "established or maintained" by a national party would appear to fall squarely within the reach of § 441a(a)(4). Indeed, if congressional campaign committees were not considered as part of the national party, their ability to make independent expenditures would seem to escape any limitation prescribed by the Act. See n. 1, *supra*.

agreements, by comparison, might allow the NRSC to determine what expenditures to make on behalf of the state committees. The Court of Appeals made much of this, asserting that the agency arrangements, unlike § 441a(a)(4) transfers, reduced the state committees to "legal shells." The court overlooks that the NRSC easily could insist that funds transferred to a state committee be utilized in a certain manner. Conversely, state committees could retain or share control over how § 441a(d)(3) spending authority is exercised by writing conditions into the agency agreement. More fundamentally, state committees are not obligated to enter into agency agreements in the first place. The delegation of spending authority is an option, not a requirement, and it is an option resting entirely with the state committees.

Finally, the Commission's interpretation is not inconsistent with any discernible purpose of the Act. In *Buckley* v. *Valeo*, we recognized that the primary interest served by the Act is the prevention of corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office. 424 U. S., at 25. It has not been suggested that this basic purpose of the Act is compromised by agency arrangements. Since the limitations on the amount that can be spent under the Act apply with equal force whether a state committee exercises its authority directly or transfers it to one of the party's national committees, an agency arrangement does not permit the expenditure of a single additional dollar.

Section 441a(d)(3) fits into the general scheme by assuring that political parties will continue to have an important role in federal elections.[21] Although the DSCC would transform this purpose into the more specific objective of stimulating political parties at the state level, none of the limited legisla-

---

[21] See S. Rep. No. 93–689, p. 7 (1974), reprinted in Legislative History of the Federal Election Campaign Act Amendments of 1974, p. 103 (1977).

tive history concerning the provision supports this view.[22] The legislative discussion of preserving a role for political parties did not differentiate between the state and national branches of the party unit. It is hardly unreasonable to suppose that the political parties were fully capable of structuring their expenditures so as to achieve the greatest possible return. Agency agreements may permit all party committees to benefit from fundraising, media expertise, and economies of scale. In turn, effective use of party resources in support of party candidates may encourage candidate loyalty and responsiveness to the party. Indeed, the very posture of these cases betrays the weakness of respondent's argument—an argument that, at bottom, features one of the two great American political parties insisting that its rival requires judicial assistance in discovering how a legislative enactment operates to its benefit.

Thus, the absence of a prohibition on the agency arrangements at issue, the lack of a clearly enunciated legislative purpose to that effect, and indeed, the countervailing existence of a transfer mechanism whose presence is difficult to reconcile with the interpretation urged by the Court of Appeals, prevent us from finding that the Commission's deter-

---

[22] It should be remembered that the section was considered at a time when Congress contemplated total public funding of general election campaigns for federal office. See § 101, S. 3044, 93d Cong., 2d Sess., 71–78 (1974). In that context, statements in Congress about the need to preserve the role of party committees, see, *e. g.*, 120 Cong. Rec. 34372 (1974) (remarks of Sen. Cannon); *id.*, at 35136 (remarks of Rep. Frenzel), are properly read as expressing concern over the function of political parties under public campaign finance rather than concern with the role of state committees vis-à-vis party committees at the national level. Thus, by allowing for the pooling of campaign funds, agency agreements increase party resources "to conduct *party-wide* election efforts." S. Rep. No. 93–689, *supra,* at 8, reprinted in Legislative History of the Federal Election Campaign Act Amendments of 1974, *supra,* at 104.

mination was "contrary to law." Therefore, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, concurring.

The issue presented in this case is whether the National Republican Senatorial Committee (NRSC) violated the Federal Election Campaign Act, 2 U. S. C. § 441 *et seq.* (1976 ed. and Supp. IV), by making expenditures that state political committees are authorized to make under § 441a(d)(1). Section 441a(d)(1) authorizes "the national committee of a political party and a State committee of a political party, including any subordinate committee of a State committee," to make certain expenditures in connection with a candidate's general election campaign, subject to defined limitations. See § 441a(d)(3). Since the NRSC clearly is not "the national committee of a political party,"[1] or "a State committee of a political party, including any subordinate committee of a State committee,"[2] it is clear that nothing in § 441a(d)(3) limits the permissible expenditure of funds by the NRSC.

The NRSC is, however, a "political committee" as that term is defined in the statute.[3] Section 441a(a)(2)(A) pro-

---

[1] Section 431(14) defines the term "national committee" as "the organization which, by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the national level, as determined by the Commission." 2 U. S. C. § 431(14) (1976 ed., Supp. IV).

[2] Section 431(15) defines the term "State committee" as "the organization which, by virtue of the bylaws of a political party, is responsible for the day-to-day operation of such political party at the State level, as determined by the Commission." 2 U. S. C. § 431(15) (1976 ed., Supp. IV).

[3] Section 431(4) defines the term "political committee" as—

"(A) any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year . . . ." 2 U. S. C. § 431(4) (1976 ed., Supp. IV).

vides that no multicandidate political committee may make contributions to a candidate that exceed $5,000.[4] Section 441a(h) provides, however, that "amounts totaling not more than $17,500 may be contributed to a candidate for nomination for election, or for election, to the United States Senate during the year in which an election is held in which he is such a candidate, by the Republican or Democratic Senatorial Campaign Committee . . . ." No section of the statute directly limits *expenditures* by the Republican or Democratic Senatorial Campaign Committees.[5] However, § 441a(a)(7) (B)(i) provides that "expenditures made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents, shall be considered to be a contribution to such candidate."

Thus, the only way that the NRSC could be said to have violated the statute in this case is if it made expenditures "in cooperation, consultation, or concert" with a candidate that exceeded $17,500. The record discloses that the NRSC in several instances made expenditures that exceeded $17,500. As I understand the record, however, it does not demonstrate that these expenditures were made in cooperation, consultation, or concert with the candidates. The record simply is silent on this point.

The only way that the NRSC could be said to have violated the statute, therefore, is if, as a matter of law, it is *incapable* of making expenditures that are not made in cooperation,

---

[4] Section 441a(a)(2)(A) provides:

"No multicandidate political committee shall make contributions—

"(A) to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $5,000." 2 U. S. C. § 441a(a)(2)(A).

[5] The Act carefully distinguishes between "contributions" and "expenditures." See § 431(8) (defining the term "contribution"); § 431(9) (defining the term "expenditure").

consultation, or concert with a candidate. In other words, the NRSC could not be said to have violated the statute unless the NRSC is deemed as a matter of law to be an agent of the candidate on whose behalf it expends funds. If this is the case, however, it would appear to me to follow almost automatically that the NRSC may act as an agent for the state committees in spending the amounts that state committees are authorized to spend by § 441a(d), since state committees are largely controlled by the state candidates that they serve. It would seem incongruous to hold that the NRSC *must* be treated as an agent of a candidate when it makes expenditures, but *may not* act as a lawful agent of that candidate's state committee.

I concur fully in the conclusion of the Court that the agency relationship utilized in this case does not violate the Act, and I join its opinion subject only to the caveat that I am not entirely sure that the expenditures at issue in this case "otherwise would be impermissible," *ante*, at 28, and n. 1. I assume, *arguendo*, that this is so, for otherwise petitioners would bear absolutely no burden to justify the expenditures made in this case.[6]

---

[6] Moreover, this case would have been much easier for me to decide if the parties had begun their presentations with an appropriate explanation of the relevant provisions of the statute instead of an unstated assumption that is not entirely obvious.