**LOUISVILLE & NASHVILLE RAILROAD COMPANY,**
Plaintiff-Appellee,

v.

**KENTUCKY UTILITIES COMPANY,**
Defendant-Appellant.

No. 82–5606.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 10, 1984.

Decided Feb. 17, 1984.

Rehearing and Rehearing En Banc
Denied March 29, 1984.

Malcolm Y. Marshall, Stephen E. Embry, Louisville, Ky., C. Michael Loftus, argued, Kelvin J. Dowd, Washington, D.C., for defendant-appellant.

William D. Grubbs, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, Ky., Fred R. Birkholz, argued, The Family Lines Rail System, Jacksonville, Fla., for plaintiff-appellee.

Before EDWARDS and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

This case is presently before the Court upon Kentucky Utilities Company's (K.U.) appeal from an order of the district court granting summary judgment in favor of Louisville and Nashville Railroad Company (L & N). K.U. contends that the district court erred in applying § 214 of the Staggers Rail Act of 1980 retroactively to supersede without a hearing two general rate orders of the Kentucky Railroad Commission (KRC). Upon consideration of the issues presented by this appeal, we conclude that the district court in granting summary judgment for L & N, properly and prospectively applied the Staggers Act to preempt the application of KRC's tariff orders.

The facts of this case are not disputed. L & N seeks to collect from K.U. tariffs for its rail transportation services in Kentucky. K.U. does not dispute that it is required to pay lawful freight rates for L & N's services. K.U. and L & N disagree however on the applicable tariff rates to be assessed. K.U. contends that the applicable rate should be $3.98 per ton, the tariff enacted by the KRC, while L & N argues that the rate should be $4.69 per ton, the ICC tariff.

The different amounts stem from the application of two general rate increases to intrastate traffic. In 1978, the Interstate Commerce Commission (ICC) approved a 5.5% general rate increase on interstate traffic.[1] After the increase, L & N and other Kentucky railroads sought a parallel increase in intrastate rates. The KRC approved a 7% general increase of those rates.[2]

On February 1, 1980, the nationwide rail carriers sought another interstate general increase, after which L & N sought another parallel intrastate increase. After the I.C.C. approved the general interstate increase,[3] the KRC approved a 3.3% increase for intrastate traffic.[4]

On October 1, 1980, the Staggers Act became effective. On November 23, 1980, the ICC, pursuant to § 214(b)(6) of the Staggers Act, granted L & N the authority to implement general tariff increases for intrastate traffic. K.U. however refused to pay the increased tariffs on coal traffic after November 23, 1980. L & N therefore filed suit in district court to collect from KU the disputed tariffs. L & N did not seek to apply its general tariffs to coal

1. Ex Parte No. 357, *Increased Freight Rates and Charges-Nationwide-8 percent,* 359 ICC 740 (1978).

2. *Order No. 92,* September 10, 1980.

3. Ex Parte No. 375, *Increased Freight Rates and Charges Nationwide-1980.*

4. *Suspension Order No. 97,* September 10, 1980.

movements before November 23, 1980, nor did it desire from K.U. "undercharges".

Confronted with cross-motions for summary judgment, District Judge Siler concluded that prospective application of the Staggers Act preempted KRC's jurisdiction to regulate general intrastate rate increases. The court therefore granted L & N's summary judgment motion and ordered K.U. to pay the difference between what was paid under the KRC rate and what was owed under the ICC rate. K.U. now appeals from the district court's judgment and order.

## I.

Section 214(b)(6) of the Staggers Act provides:

Notwithstanding any other provision of this subtitle, a state authority may not exercise any jurisdiction over general rate increases under Section 10706 of this title . . . .

49 U.S.C. § 11501(b)(6). K.U. concedes that the rate increases involved in this appeal are "general" and that the Staggers Act withdraws from state authorities the jurisdiction to hear or approve such increases. In this case, K.U. contends that the preemption of KRC rate orders resulted from impermissable, retroactive application of the Staggers Act. We disagree.

In the companion cases of *Hanna Mining Co. v. Escanaba and Lake Superior Railroad Co.,* 664 F.2d 594 (6th Cir.1981) and *Cleveland Cliffs Iron Co. v. ICC,* 664 F.2d 568 (6th Cir.1981), this Court refused to apply retroactively the substantive provisions of the Staggers Act to a rate dispute which was pending on appeal at the time the Act was enacted. *See also Iowa Power and Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796 (8th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). Both cases involved the question of which substantive legal provisions the court should apply to an appeal of a rate decision "whose genesis and conclusion span a long time frame" before the enactment of the Staggers Act. After careful consideration of the legislative history and statutory di-

rection of that Act, the *Cleveland Cliffs* court concluded that:

a proper construction of the Staggers Rail Act requires us to hold that neither the ICC nor this Court is relieved of its respective obligations under the former statute to determine the reasonableness of the challenged rates . . . the law to be applied is that which was in existence before the enactment of the Staggers Rail Act and upon which the Commission made its decisions in these cases.

664 F.2d at 589. In *Hanna,* this Court adopted the reasoning of *Cleveland Cliffs* and found that Congressional intent would be advanced and great hardship to the parties would be avoided if pre-Staggers Act law were applied to a market dominance determination appeal which had been pending before the Act became effective. In *Hanna* and *Cleveland Cliffs* therefore this Court refused to apply retroactively to "pending" cases the substantive legal provisions of the Staggers Act. K.U. contends that these decisions preclude the application of the Staggers Act in this case to supersede KRC's jurisdiction.

*Cleveland Cliffs* and *Hanna* however are clearly distinguishable from the case at bar. This Court will not give retroactive application to the substantive provisions of the Staggers Act where to do so would work a substantial hardship upon the parties in a "pending" litigation. In the case before us, by contrast, the district court applied the jurisdictional, not the substantive provisions, of the Staggers Act. Moreover, the only litigation involved in the case was instituted *after* the Staggers Act became effective and is based upon the implementation of post-Act rate increases. Because the Staggers Act does not in this case alter the substantive law in a pending case, we conclude that *Cleveland Cliffs* and *Hanna* are not dispositive of the issues before us. We are not confronted, as were those courts, with the application of pre-Act law to rail rate disputes that were pending before the ICC or the courts before October 1, 1980.

We are confronted instead with the application of the jurisdictional provisions of the Staggers Act to general rate increases enacted after October 1, 1980.[5] Faced with nearly identical situations, several circuits have applied the Staggers Act prospectively to supersede a state regulatory agency's jurisdiction over general rate increases. In *Indianapolis Power and Light Co. v. I.C.C.*, 687 F.2d 1098 (7th Cir.1982), the Seventh Circuit held that the Staggers Act prevented the Public Service Commission of Indiana from blocking the implementation of general railroad rate increases previously docketed and approved by the ICC. The court reasoned that the jurisdictional provisions of the Staggers Act explicitly remove from a state regulatory agency the power to suspend rate tariffs republished after the effective date of the Act. After careful consideration of the Congressional policies and intent embodied in the Staggers Act, the Court declared:

> These tariffs are not being raised retroactively and hence the state agency's initial hold-down decisions are not undone—they are simply superseded. The ICC's action allows uniform national rates to be charged prospectively, now that Congress has established that the states should no longer be able to further their own interests at the expense of the nation's.

687 F.2d at 1105.

■ The Court of Appeals for the District of Columbia agreed with this interpretation of the Staggers Act in *Burlington Northern R.R. v. ICC*, 679 F.2d 934 (D.C.Cir. 1982). In that case, the ICC entered a prescription order which established as the maximum reasonable rate for transportation the "per ton [rate] effective July 1, 1978, as escalated annually under the escalation formula found in the [1976] Letter of Agreement between Burlington Northern, Inc. and Iowa Power and Light Company."

679 F.2d at 940. The Court held however that a pre-Staggers Act prescription order setting a lower tariff could not prevent the implementation of an increased rate. Like the Seventh Circuit, the District of Columbia Circuit reasoned that the Staggers Act is applied prospectively when it nullifies a pre-Act prescription order. The *Burlington Northern* Court held:

> When a rate increase is tendered to the ICC after the effective date of the Staggers Act and the tendered rate is allegedly below the Section 202 market dominance threshold, the Commission may not reject the rate simply because it is above the level specified in an outstanding prescription order.

679 F.2d at 941. The appeal before us is indistinguishable from *Burlington Northern* and *Indianapolis Power.* The KRC entered pre-Act orders limiting the amount of general increases which L & N could implement. Under the reasoning of *Burlington Northern* and *Indianapolis Power,* however, the post-Act implementation of those pre-Act orders was properly precluded by the Staggers Act.

The Tenth Circuit, in *Colorado Springs v. I.C.C.*, 724 F.2d 857 (10th Cir.1983), sanctioned this application of the Staggers Act's jurisdictional provisions. In that case, the Tenth Circuit upheld the I.C.C.'s interpretation of the Staggers Act and affirmed the dismissal of the Colorado Public Utilities Commission's appeal from an ICC decision approving four general rate increases. In specifically adopting the Seventh Circuit's reasoning in *Indianapolis Power,* the Tenth Circuit concluded that the State of Colorado lost jurisdiction under the Staggers Act over the application of general rate increases to intrastate rates.

We are persuaded by *Colorado Springs* and the bulk of applicable case-law that the

---

5. This Circuit has not explicitly addressed the question of jurisdiction over general rate increases. In *Kentucky Utilities v. I.C.C.*, 721 F.2d 537 (6th Cir.1983) this Court had occasion to review under federal standards a K.R.C. order setting maximum *specific* rates for intrastate coal shipments. We vacated the I.C.C.'s ruling, finding that K.R.C.'s order had complied with the federal standards for *specific* rate in-

creases established by the Staggers Act. K.R. C.'s jurisdiction to approve *specific* rate increases had not been withdrawn. In the case before us, however, K.U. concedes that its proposed increases are *general.* The prior *Kentucky Utilities v. I.C.C.* decision, therefore, is clearly distinguishable from the case currently before us.

prospective application of the Staggers Act precludes the post-Act implementation of a state agency's rate order. The Staggers Act prospectively withdraws the jurisdictional base of the state agency. In the case before us, therefore, we conclude that the district court correctly and prospectively applied the Staggers Act to preclude the post-Act implementation of KRC's rate orders.

The prospective application of the Staggers Act in this case is supported by the I.C.C.'s interpretation of the Act, to which we owe "great deference." *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981). *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

Moreover, our disposition of this case works no "manifest injustice" on K.U. because the utility had ample notice of the proposed increases, had sufficient time to file a petition for suspension with the ICC and continues to have an alternative remedy under 49 U.S.C. § 11701 or § 10704. Confronted with virtually identical facts, the *Indianapolis Power* court found that the utility companies were not victims of "manifest injustice" within the meaning of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Rather, the utility companies, like K.U., were victims of "their own wrong guess." We conclude therefore that the district court's prospective application of the Staggers Act to preclude the implementation of K.R.C.'s rate orders was consistent with the goals of Congress, the weight of controlling case-law, the I.C.C.'s interpretation and *Bradley's* prohibition against "manifest injustice."

## II.

K.U. also contends that the district court erred in finding that the disputed increases could be implemented without a hearing. We find this contention to be without merit. Section 214(e) of the Staggers Act, 49 U.S.C. § 11501(e) provides:

> The Commission may take action under the section only after a full hearing.

Such a hearing however is only required to prescribe a special intrastate rate increase. A hearing is not required for the enforcement of the previously authorized general rate increases in this case. The ICC did not enter prescription orders, it merely granted to L & N authority to file its tariffs. The Tenth Circuit, in *Colorado Springs,* although it remanded for a hearing on a special rate increase, did not require a hearing on a general rate increase analogous to the one before this Court. As the district court correctly concluded, therefore, "nothing in the statute, as amended, suggests that a hearing is necessary . . ."

This Court thus concludes that the district court did not err in its refusal to grant K.U. a hearing and in its prospective application of the Staggers Act. Accordingly, the judgment of the district court is hereby AFFIRMED.