Louie J. CAPOVILLA, Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent.

No. 89–70193.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1990.

Decided Jan. 24, 1991.

---

Larry Lockshin, Britt, Lockshin, Simlick & Nevin, Sacramento, Cal., for petitioner.

Thomas W. Sadler, Railroad Retirement Bd., Chicago, Ill., for respondent.

Before CANBY, NOONAN and RYMER, Circuit Judges.

CANBY, Circuit Judge:

Louis J. Capovilla appeals the Railroad Retirement Board's dismissal of his application for a total and permanent disability annuity pursuant to the Railroad Retirement Act, 45 U.S.C. § 231a. We affirm the Board's decision.

### FACTS AND PROCEEDINGS

Capovilla injured his back while working for the Southern Pacific Railroad in 1984. He has not worked since that date. On August 20, 1986 he reached a settlement with the railroad.

By the terms of the settlement Capovilla agreed that he would not return to duty with the railroad, but that his actual resignation from employment would occur in July 1991. Of the $390,000 settlement, $80,000 was allocated to the period from November 1, 1984 to July 31, 1991 as compensation for "time lost." The settlement was structured this way to allow Capovilla to qualify in the future for an annuity under section 231a(a)(1)(iv), which requires that twenty years of service be completed.

In 1985 Capovilla applied for an annuity under 45 U.S.C. § 231a(a)(1)(v), a portion of the Railroad Retirement Act of 1974, which provides annuities to "individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment." An appeals referee of the Bureau of Hearings and Appeals relied on a Board-promulgated regulation,

20 C.F.R. § 218.19 [1], in denying Capovilla's application. Capovilla appealed this decision to the Board. The Board affirmed the decision. This appeal followed.

## ANALYSIS

The Board applied its own regulation to determine that Capovilla's claim should be denied.[2] We must here decide if that regulation is consistent with the Railroad Retirement Act ("Act") enacted by Congress in 1974. If the Act is silent or ambiguous on a specific issue, we must then determine whether the Board's regulation is based on a permissible construction of the Act.[3] *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

At issue in this case is 20 C.F.R. § 218.19 [4] which provides: "Pay for time lost because of personal injury must be credited to an actual period of time lost. The annuity can begin no earlier than the day after that period ends." *Id.*

Capovilla's pay for time lost because of personal injury was credited to the period ending July 31, 1991. Until that period expires, regulation 218.19, if valid, effectively blocks his claim for an annuity under 45 U.S.C. § 231a(a)(1)(v). We now turn to the validity of that regulation.

Section 231a(e)(1) of the Act states that "[n]o individual shall be entitled to an annuity under subsection (a)(1) of this section until he shall have ceased to render compensated service...." [5] 45 U.S.C. 231a(e)(1). If Capovilla's settlement is characterized as "compensated service" this provision blocks his claim and supports the Board's regulation.

The Act's definition section is of some help. Compensation is defined as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers ... including remuneration paid for time lost as an employee, but remuneration paid for time lost shall be deemed earned in the month in which such time is lost." 45 U.S.C. § 231(h)(1). Applying this provision to the terms of Capovilla's settlement indicates that the remuneration he received for the period ending July 31, 1991 is compensation.

Although Capovilla agrees that the remuneration for time lost is compensation, he argues that he did not *render* compensated service and therefore his claim is not blocked by section 231a(e)(1). We do not think that the Board is required to read the statute as Capovilla does. The Act states that compensation means remuneration for services rendered, including remuneration for time lost. 45 U.S.C. 231(h)(1). The Act thus allows for the proposition that those individuals that receive payment for time lost are rendering service. The Board could reasonably conclude that this language puts such individuals squarely under the section 231a(e)(1) prohibition.[6]

1. Since the time the appeals referee and the Board reviewed Capovilla's claim, this section has been renumbered to 218.29. Sections 218.-19 and 218.29 are identical in relevant part.

2. The Board has the right to promulgate rules and regulations to implement the statutory directives of the Railroad Retirement Act. 45 U.S.C. 231f(b)(5).

3. We need not decide whether the Board's regulation construed the Act in the only way permissible or whether it construed it in the way we would have if the issue had come before us initially. *See FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) We may not substitute our own construction of a statute for a reasonable interpretation made by the Board. *See Chevron U.S.A. v. Natural Resources Defense*

*Council, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984).

4. The title of this provision is Pay For Time Lost. It falls under the larger section, How Work and Special Payments Affect an Employee, Spouse, or Divorced Spouse Annuity Beginning Date.

5. Of significance is the fact that Congress made only one express exception in this provision. "As used in this subsection, the term 'compensated service' shall not include any service as an elected public official of the United States, a State, or any political subdivision of a State." 45 U.S.C. § 231a(e)(1).

6. Further support for the Board's regulation is found in section 231d(a)(iii)(C) which provides

■ This interpretation of the Act is supported by the legislative history. The Act's purpose was to make possible more generous benefits than otherwise could be provided from the limited resources available, by confining participation in benefits to those who completely relied upon retirement benefits. *United States v. Bush*, 255 F.2d 791, 793–94 (3rd Cir.1958) (citing Hearing Before the Committee on Interstate and Foreign Commerce, H.R. 6956, 75th Cong., 1st Sess. 96 (1937)).[7] Disallowing an annuity under section 231a(a)(1)(v) where the applicant has already received payment for time lost furthers this policy.

In addition, this interpretation of the Act allows for consistency under subsections (iv) and (v) of section 231a(a)(1). Subsection (iv) entitles individuals with permanently disabling mental or physical conditions who have completed twenty years of service to obtain an annuity. Section 231(f)(1) provides that in determining "years of service" any month in which an individual renders service for compensation or "receive[s] remuneration for time lost" is to be counted. 45 U.S.C. § 231(f)(1). A month to which pay for time lost has been allocated by means of a settlement is treated as a month of compensated service under the Act, just as if the employee had worked during that month and received wages for such work. This provision benefits an applicant, such as Capovilla, by allowing him to use time lost due to injury to accumulate the twenty years necessary to be eligible eventually for an annuity under subsection (iv).

In fact, Capovilla's settlement agreement was carefully structured by counsel so that it preserved Capovilla's right to claim the period from November 1984 through July 1991 as "years of service" to the railroad, thereby permitting him to seek an annuity under subsection (iv). As a result of the settlement, Capovilla will receive eighty additional months of service under the Act by the end of July 1991, at which time he will have 243 months of creditable service, enough to be eligible for an annuity under subsection (iv).

But Capovilla argues that what counts as "years of service" in subsection (iv) does not count as "service" within the meaning of section 231a(e)(1), so that he can also be eligible now for an annuity under subsection (v). We disagree. The Board could reasonably conclude that, under the Act, Capovilla can accumulate months of creditable service without actually rendering services, but that, contrary to his further contention, that service is creditable for all purposes.

## CONCLUSION

Neither the plain language of the Act nor its legislative history precludes the Board's regulation or its application of that regulation in this case.

AFFIRMED.

---

that an annuity may not begin until "in the case of an applicant otherwise entitled to an annuity under section 231a(a)(1) ... the date following the last day of compensated service of the applicant ..." Our analysis of this section parallels that of section 231a(e)(1). Here, too, the Act's definition of compensation applies. Capovilla rendered compensated services and is precluded from filing a section 231a(a)(1)(v) claim.

**7.** *Bush* dealt with the legislative history of 45 U.S.C. § 228b(a), the predecessor to 20 C.F.R. § 218.19. 45 U.S.C. § 228b(a) stated as a condition of eligibility that the applicant for an annuity shall have ceased to render compensated service to any person whether a railroad or non-railroad employer. *Bush*, 255 F.2d at 792.