Samuel M. YONTER

v.

AETNA FINANCE COMPANY
and Equifax Services, Inc.

Civ. A. No. 91–0973.

United States District Court,
E.D. Louisiana.

Oct. 18, 1991.

Samuel M. Yonter, in pro. per.

Liskow & Lewis by Julie E. Schwartz and Daniel E. Lagrone, New Orleans, La., for defendant Aetna Finance Co.

Phelps, Dunbar by Rutledge C. Lement, Jr., Amelia Williams Koch and A. Lee Levert, for defendant Credit Bureau, Inc. of Georgia.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

The Court was presented with dual motions for summary judgment, in the above captioned case, by both defendants, Aetna Finance Company ("Aetna") and Credit Bureau, Inc. of Georgia ("CBI"). For the reasons stated below, this court grants summary judgment in favor of both defendants.

## FACTS

ITT Consumer Finance Corporation ("ITT") was listed on plaintiff Samuel M. Yonter's credit report as being a party that requested credit information on him. Aetna is a subsidiary of ITT. It was Aetna who used this information to send pre-approved guaranteed loan solicitations to certain credit worthy individuals, including the plaintiff.

Aetna obtained the list information by entering into an agreement with C.B.I., a credit reporting bureau, in which C.B.I. was to create a list of "criteria satisfying" borrowers to whom Aetna would offer their promotion. This is the common industry practice known as "prescreening." Aetna subsequently had this list sent to a direct mail company to process the mailing to the persons identified on the prescreened list.

The company offering the service or product, in this case Aetna, does not receive any credit details of the persons on the list. The list contains only the names and addresses that allow the potential credit grantor to make their business offer. In many cases, including the one at present, the credit grantor (customer of the bureau) receives no information at all because the prescreened list is sent directly to a mailing service.

Plaintiff alleges that this process caused him to suffer, among other things, mental anguish and invasion of privacy as a result of the prescreening performed by one defendant, C.B.I., a credit reporting agency, for the other defendant, Aetna, a credit grantor.

## DISCUSSION

The case at hand involves no issue of material fact. At controversy is an interpretation of law. That law is the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. sec. 1681–1681t, specifically section 1681b, which provides that:

> "[A] consumer reporting agency may furnish a consumer report under the following circumstances and no other ...
> (3) To a person which it [the credit reporting agency] has reason to believe—

> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review collection of an account of, the consumer, or
> ...
> (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

15 U.S.C. 1681b(3)(A), (E).

The Federal Trade Commission ("FTC") is the federal agency empowered by Congress to administer and enforce this statute. 15 U.S.C. sec. 1681s. The Fair Credit Reporting Act provides the FTC with "procedural, investigative and enforcement powers, including the power to issue procedural rules to enforce compliance" with the act. 15 U.S.C. sec. 1681s. As the act's administrative agency, the FTC has issued various commentaries and interpretive readings of the act. The FTC, in at least one writing, has admitted that "the commentary does not have the force of regulations or statutory provisions, and its contents may be revised and updated as the commission considers necessary or appropriate." 16 C.F.R. sec. 600.2 appendix.

While the FTC commentaries and opinions are not law, the Supreme Court has stated that when Congress has not addressed the precise question at issue:

> "The court does not simply impose its own construction on the statute as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The *Chevron* court further reasoned that a court need not conclude that an agency's construction of a statute that it administers was the *only* permissible one, or that the court would have reached a different conclusion. The reviewing court need only

find that the agency's construction is *one* permissible reading of the statute. *Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11; *see also FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981) (appropriate inquiry is whether the agency's construction is a "sufficiently reasonable" interpretation of Congressional intent); *National Grain & Feed Association v. Occupational Safety & Health Administration*, 866 F.2d 717, 733 (5th Cir.1989) ("only where Congressional intent is pellucid are we entitled to reject reasonable administrative construction of a statute"); *Clark Oil Products Co. v. Hodel*, 667 F.Supp. 281, 290 (E.D.La.1987) (question for court is whether agency's answer is based on a permissible construction of the statute).

■ The Federal Trade Commission has interpreted the Fair Credit Reporting Act to permit prescreening of individual consumers listed with credit reporting agencies. The FTC said in its interpretation, "prescreening is permissible under the FCRA if the client agrees in advance that each consumer whose name is on the list after prescreening will receive an offer of credit." 16 C.F.R. sec. 600. The commission went on to reason that "a permissible purpose for the prescreening service exists under this section, because of the client's [Aetna] present intent to grant credit to all consumers on the final list, with the result that the information is used 'in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to the consumer.'" *Id.* It is an undisputed fact that Aetna contracted to have their mailing service send the same offer to each person on the prescreened list provided by defendant C.B.I.

The 1973 view of the Federal Trade Commission, recited above, was recently reaffirmed in a FTC Official Staff Commentary. "The presence of an intent by the user of the prescreening service to grant credit provides a sufficient nexus between creditor and consumer to meet the statu-

tory requirement that the creditor intends to use the information 'in connection with a credit transaction ... involving an extension of credit to the consumer.'" FTC Official Staff Commentary, Fed.Reg. 18807 (1990).

The Federal Trade Commission's ears have not been completely deaf to claims such as those asserted by the plaintiff. However, the FTC has explained:

> The commission recognizes that the legislative history of the FCRA reveals a concern for the consumers' privacy and the accuracy of information stored at credit bureaus, and demonstrates a sensitivity to the balance between the free flow of credit information for legitimate business purposes and the right of the consumer to keep his affairs private. However, the practice of prescreening results in no significant harm to consumers and the practice is not inconsistent with the basic purposes of the act.

38 Fed.Reg. 4946 (1973).

■ As noted above, the FTC interpretation should be entitled to deference because the interpretation was issued after public hearings called to reconcile various policy considerations. This special deference is also warranted because the agency position is long held and has been consistently enforced. In addition, Congress, though amending the FCRA many times, has not passed legislation to limit or legislatively overrule the FTC interpretation which endorses the practice of prescreening. In *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1966), the Supreme Court noted that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction." "Such deference is particularly appropriate where, as here, an agency's interpretation involves issues of considerable public controversy, and Congress has not acted to correct any misperception of its statutory objectives." *United States v. Rutherford*, 442 U.S. 544, 554, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979).

Plaintiff has cited two cases in support of his position. *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 70 (S.D.N.Y.1982); *Greenway v. Information Dynamics Ltd.,* 399 F.Supp. 1092 (D.Ariz.1974), aff'd, 524 F.2d 1145 (9th Cir.1975), cert. denied 424 U.S. 936, 96 S.Ct. 1153, 47 L.Ed.2d 344 (1976). The cases lend some good language to plaintiff's case when read out of their proper context. Unfortunately, the cases are factually distinct in many ways and, regardless, are from nonbinding district courts. They do not persuade this Court that summary judgment is not appropriate in this action.

The plaintiff's view in this case is simply contrary to longstanding agency interpretation, Congressional acquiescence, widespread industry practice and, as the defendant respectfully asserts in his brief, "common sense."

Accordingly,

IT IS ORDERED that the motion of the defendants, Aetna Finance Co. and Credit Bureau, Inc. of Georgia, for summary judgment be and are hereby GRANTED.