CARTER/MONDALE PRESIDENTIAL
COMMITTEE, INC., Petitioner,

v.

FEDERAL ELECTION
COMMISSION, Respondent.

Nos. 84–1393, 84–1499.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 20, 1985.

Decided Nov. 1, 1985.

Douglas B. Huron, Washington, D.C., for petitioner.

Carol A. Laham, with whom Charles N. Steele and Richard B. Bader, Washington, D.C., were on brief, for respondent.

Before MIKVA and GINSBURG, Circuit Judges, and MARKEY,* Chief Judge, United States Court of Appeals for the Federal Circuit.

MARKEY, Chief Judge.

The Carter/Mondale Presidential Committee, Inc. (Committee) petitions for review of Federal Election Commission (FEC) decisions dated July 12, 1984 and September 20, 1984 "not to reconsider the final repayment determination issued to Jimmy Carter and the Carter/Mondale Presidential Committee, Inc., in July of 1981." Finding no abuse of discretion, we uphold those decisions.

## BACKGROUND

The Committee has been earlier before this court. On July 6, 1982, it petitioned for review of FEC's requirement for repayment of $104,300.78 in non-qualifying payments attributed to the Committee's feder-

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1982).

al matching payment account.[1] Because that petition was not filed "within 30 days after the agency action by the [FEC] for which review is sought," 26 U.S.C. § 9041(a), this court dismissed it as time-barred. *See Carter/Mondale Presidential Committee, Inc. v. Federal Election Commission,* 711 F.2d 279, 283–84, 291 (D.C. Cir.1983).

Thereafter, in respect of two other campaign committees, this court held that FEC exceeded its authority under 26 U.S.C. § 9038(b)(2) when it required repayment of the entire amount of non-qualifying payments (rather than the portion attributable to the matching payment account). *Kennedy for President Committee v. Federal Election Commission,* 734 F.2d 1558, 1561 (D.C.Cir.1984); *Reagan for President Committee v. Federal Election Commission,* 734 F.2d 1569 (D.C.Cir.1984) (hereinafter cited together as *Kennedy*).

On July 6, 1984, FEC's General Counsel sent the Commission a memorandum regarding the effect of this court's holding in *Kennedy,* noting that the Commission was thereby to reopen its determinations with respect to the Kennedy and Reagan Committees but recommending that, "[i]n the interests of finality in the administrative process, both now and in the future," the Commission not reconsider any other 1980 repayment determination. Counsel explained:

> ... [T]he interests of the Commission should be clear. Once the Commission has decided a case, the case is closed. An exception, of course, is where a court requires that the Commission conduct further proceedings in a particular case, such as the situations with Reagan and Kennedy. If the Commission reopens cases which are closed, and in which appeals have been unsuccessful or where no appeal has even been taken, the Commission will face enormous difficulties with respect to administration of its pub-

lic financing programs. Where must the line be drawn? If, for instance, the Commission decides to amend a regulation in 1988 which has been in existence since 1976, how far back must the Commission go in reopening the cases of those candidates and committees affected by that old regulation? Could the Commission effectively take on such a burden? What are the public policy considerations? These and other questions will arise if the Commission should decide to resolve the same controversy more than once.

In that July 6 memorandum, counsel stressed the importance of finality to efficient administration of the Commission's business and cited this court's decision in *Carter/Mondale, supra,* as demonstrating the priority of the FEC's interest in prompt review over the Committee's interest, belatedly asserted, in obtaining judicial review. Counsel concluded:

> LaRouche and Carter have both been given final determinations by the Commission; both appealed and lost in the Court of Appeals. For the Commission to now change its final determinations would, in addition to the specific problem noted above, create a dangerous precedent that would ... tend to vitiate the principle of finality with respect to all Commission determinations presented as definitive.[5]

---

[1.] That requirement was made pursuant to the Presidential Primary Matching Payment Account Act, 26 U.S.C. § 9038(b)(2) (1985). Campaign expenses are not "qualified" under 26 U.S.C. § 9035(a) if they exceed certain expendi-

[5.] One incident does exist in which the Commission decided, *sua sponte,* to reverse a previous decision in a repayment context. However, this action was based upon the Commission's reversal of its own decision, and did not raise the problems associated with the finality of prior Court of Appeals' decisions. On August 23, 1983 the Commission voted to proceed with a reconsideration of the Anderson for President Committee Final Audit Determination despite the Office of General Counsel's recommendation that the Commission not re-open the case. This decision was based on the Commission's consideration of the Reagan for President final repayment determination in which the Commission reversed its position put forward in its initial determination involving surplus repayment under 26 U.S.C. § 9038(b)(3). In its ini-

ture limitations, including limitations on spending in each state during the presidential primaries. *See Kennedy for President Committee v. Federal Election Commission,* 734 F.2d 1558, 1560 n. 1 (D.C.Cir.1984).

tial determination, the Commission had included contributions received after the candidate's date of ineligibility in the calculation of surplus repayment. The Commission's final determination permitted these contributions to be treated as outside the Reagan Committee's surplus funds, thereby reducing the committee's surplus repayment. John Anderson, the only other candidate in 1980 having surplus funds after the primary campaign, had earlier repaid the U.S. Treasury without challenging the Commission's inclusion of post-ineligibility contributions in the calculation of surplus and his surplus repayment under 26 U.S.C. § 9038(b)(3). On September 29, 1983, the Commission voted to repay John B. Anderson and the Anderson For President Committee $44,485.65 based on a recomputation of their surplus repayment in light of the Reagan For President final repayment determination. . . .

Having without request considered whether it should apply this court's ruling in *Kennedy* to other closed determinations, FEC unanimously determined on July 12, 1984 "not to re-open the repayment [of non-qualifying payments] process with respect to the campaigns of John Anderson, Jerry Brown, Jimmy Carter and Robert Dole."

On August 7, 1984 the Committee wrote FEC asking for reconsideration of its July 12 decision, citing FEC's August 23, 1983 decision to reopen the Anderson surplus repayment audit (described in footnote 5 of General Counsel's July 6 memorandum, *supra*). Saying that the 1983 Anderson surplus audit decision reflected FEC's "basic mode of operation," the Committee argued that FEC's July 12, 1984 decision not to reopen in light of *Kennedy* was an abuse of discretion because it disregarded that "basic mode," i.e., the principle of equal treatment of all candidates. The Committee further asserted that because this court's holding in *Kennedy* resulted in a benefit to the campaign committees involved in those cases, which benefit was not available to the Committee, FEC was required by its "basic mode" and the equal treatment "principle" to reopen the Carter/Mondale determination.

The Committee also said that, "to protect its rights," it had petitioned for review in this court (App. No. 84–1393) on August 7, 1984.

On September 13, 1984, FEC's General Counsel sent FEC a second memorandum,

asserting that the 1983 Anderson decision (pertaining to surplus repayment) was factually distinct from the present situation (pertaining to non-qualifying payments), and that the 1983 Anderson decision did not constitute a "practice" requiring reopening of audits long closed. Citing numerous authorities, Counsel emphasized the central role of finality in accomplishing FEC's mission.

On September 20, 1984, FEC again unanimously determined "not to reconsider the final repayment [of non-qualifying payments] determination issued to Jimmy Carter and the Carter/Mondale Presidential Committee, Inc., in July of 1981."

The Committee filed a second petition (App. No. 84–1499) on October 2, 1984.

On October 15, 1984 this court granted the Committee's motion to consolidate the petitions and establish a common briefing schedule.

## OPINION

The issue is narrow, i.e., whether FEC abused its discretion in declining to reconsider its final determination respecting the Committee's repayment of non-qualifying payments. Because FEC has adequately satisfied its minimal burden of showing a "coherent and reasonable explanation of its exercise of discretion," *MCI Telecommunications Corp. v. Federal Communications Commission*, 675 F.2d 408, 413 (D.C. Cir.1982), we hold, as above indicated, that FEC did not abuse its discretion.

The record does not support the Committee's assertion that the issue here is solely one of simple "fairness." Nor does the record support the Committee's assertion that FEC's reopening of the Anderson surplus audit renders its refusal to reopen here a violation of what the Committee terms "the Anderson principle" (i.e., "finality must yield to the overriding imperative of treating all presidential candidates according to the same rules"). The single decision to reopen the Anderson surplus repayment audit hardly constitutes a "longstanding and well-established practice deviation from which might justify judicial intervention." *Vermont Yankee Nuclear*

*Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 543 n. 17, 98 S.Ct. 1197, 1211 n. 17, 55 L.Ed.2d 460 (1978). There is no evidence that any "reopening" practice was perceived or relied upon by anyone before the instance of this petition. *See British Caledonian Airways, Ltd. v. Civil Aeronautics Board,* 584 F.2d 982, 986 (D.C.Cir.1978). Far from establishing any general or even selective practice of reopening final determinations, the record before us displays only an isolated situation in which facts distinguishable from those in the case at hand tugged the Commission away from application of the finality principle.

■ FEC's *sua sponte* decision to reopen the Anderson surplus audit was based on its treatment of the Reagan Committee's surplus, in which it adopted a methodology respecting "surplus repayment" different from that earlier employed in the Anderson surplus audit. If FEC had not reopened the Anderson surplus audit, the only two committees enjoying a surplus would have been differently treated. As set forth in General Counsel's post-decision memorandum of September 26, 1983, that decision was taken "to assure equal treatment of all 1980 presidential campaigns."[2] That goal was obtained, and could only be obtained, by treating the two similarly situated (surplus-enjoying) committees the same. Having determined that its treatment of the Reagan Committee audit employed the correct methodology, equality of treatment required a reopening of, and application of that methodology to, the Anderson surplus audit.

The Committee asserts that it will suffer, if FEC does not reopen its audit, an "inequality" vis-a-vis the Kennedy and Reagan Committees as a result of this court's orders in *Kennedy.* In effect, the Committee argues that FEC's failure to cure that inequality is an abuse of discretion. The argument is without merit.

■ The Committee's protestations of inequality resulting from *Kennedy* are simply unfounded. All committees that timely pursued their right to judicial review of non-qualifying payment determinations have received the same measure of relief. Likewise, all committees that slept on their rights (as did Carter/Mondale) have received their common measure. Thus all *similarly situated* committees have in fact been treated similarly insofar as the effect of this court's orders in *Kennedy* is concerned.

That FEC, having changed its auditing practices midstream, *sua sponte* reopened the audit of the similarly situated Anderson Committee does not create a duty to reopen the audits of all committees whenever a reviewing court has ordered relief upon the timely petition of one or two such committees. No favoritism can be attributed to FEC when it carries out the letter of a court's order with respect to the particular committees designated. To posit a duty of FEC to reopen all past and closed determinations whenever it is required by a court to open one, would be to set the Committee's second attempt to acquire the relief it was denied because of its tardiness in *Carter/Mondale, supra,* above Congress' "strong interest in resolving federal matching fund audits expeditiously." 711 F.2d at 289 & n. 19.

■ The Committee argues that FEC acted unlawfully in giving no express reasons for refusing to reopen its final repayment determination in light of *Kennedy,* a refusal the Committee labels a "shift in position" in view of FEC's Anderson reopening (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). As above indicated, and though helpful to a court on review, a statement of reasons by FEC itself is not required, and absence of

---

**2.** As is its practice, FEC did not itself explain its unanimous August 23, 1983 decision to reject the recommendation of the General Counsel that it not reopen the Anderson surplus repayment audit. Reasons supporting FEC's decision may be gleaned from General Counsel's September 26, 1983 post-decision memorandum. *See Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 38 & n. 19, 102 S.Ct. 38, 45 n. 19, 70 L.Ed.2d 23 (1981).

an express statement does not render its action unlawful where reasons for that action may be gleaned from its staff's reports. *See Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 38 & n. 19, 102 S.Ct. 38, 45 & n. 19, 70 L.Ed.2d 23 & n. 19 (1981). FEC's interest in and need for finality, as articulated and supported in its General Counsel's memoranda, constitute a fully adequate basis for upholding the decisions under review on the present petitions.

The Committee having failed to establish that FEC abused its discretion in deciding not to reconsider the final repayment determination issued to Jimmy Carter and the Carter/Mondale Presidential Committee, FEC's decisions of July 12 and September 20, 1984 are sustained.

*It is so ordered.*