COMMON CAUSE, Plaintiff,

v.

FEDERAL ELECTION COMMISSION, Defendants.

Civ. A. No. 85–968.

United States District Court, District of Columbia.

June 26, 1986.

Carol F. Lee, Washington, D.C., for plaintiff.

Robert W. Bonham, III, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Common Cause brings this action for judicial review of an order by the Federal Election Commission (the Commission) dismissing plaintiff's administrative complaint. Common Cause alleges that President Reagan's 1984 Presidential campaign committee violated the federal election laws by failing to pay for and report the expenses of a trip to Illinois, where the President addressed a convention of the Veterans of Foreign Wars. Common Cause brought these allegations before the Commission in an administrative complaint, which the Commission dismissed. Pursuant to 2 U.S.C. § 437g(a)(8), Common Cause now seeks a declaration that the Commission's action was "contrary to law." Before the court are the parties' cross-motions for summary judgment.

## Background

On August 22, 1984, Ronald Reagan received the Republican Party's nomination for President. From the Party's convention in Dallas, Texas, Mr. Reagan flew directly to Chicago, Illinois. There, on August 24, 1984, he addressed a convention of the Veterans of Foreign Wars (VFW). Mr. Reagan did not expressly mention his candidacy during this speech. Nor did he solicit from the audience contributions to his campaign. The President did echo, however, his campaign theme—emphasized in his acceptance speech the day before—of a "springtime of hope" for America. *See* Ex. C to Def.Ex. 1, at 8; Pl.Ex. B at 1173, 1174. He also credited the previous four years of his administration with military strength and economic recovery and, without mentioning Walter Mondale, attacked the positions of his Democratic opponent.

Both Mr. Reagan's audience and the press reacted as if the remarks were a campaign speech. The audience chanted "Four more years, four more years!" Pl. Statement of Mat. Facts Not in Dispute ¶ 7. The NBC Nightly News reported, "The president flew on to Illinois, which the Reagan camp regards as a key battleground.... He attacked Mondale as soft on defense...." Ex. A to Complaint, at 2. Newspaper accounts of the speech further emphasized this campaign theme with headlines such as "BATTLE FOR ILLINOIS," *Chicago Sun-Times;* "Bringing the Fight to Illinois," *Chicago Tribune;* "Democrat is Linked to 'Failed Policies' " and "President Criticizes Mondale for Stance on Security Issues," *Washington Post;* and "CAMPAIGN SALVOS" and "President raps rival for stand on defense," *Boston Globe.* Pl. Statement of Mat. Facts, ¶ 8.

The federal election laws required periodic reports of expenditures by Mr. Reagan's authorized campaign committee. The Presidential Election Campaign Fund Act, 26 U.S.C. § 9001, *et seq.*, provides for public financing of Presidential election campaigns. In order to be eligible for public funding, a candidate must agree, *inter alia*, to furnish to the Commission full

reports of all "qualified campaign expenses." 26 U.S.C. § 9003(a)(1); 11 C.F.R. § 9006.1(a) (1986). Since Mr. Reagan had accepted public financing, the expenses of the Chicago trip should have been reported if they met the definition of "qualified campaign expenses." In addition, under Commission regulations, if the trip was "campaign-related" and had involved government conveyance, the President was required to reimburse the Government for the costs of the trip. 11 C.F.R. § 9004.7(b)(5) (1986).

The statute defines a "qualified campaign expense" as an expense within the prescribed "expenditure report period" that is incurred by a Presidential candidate "to further his election," with the exception of expenses whose incurring or payment violates any federal or applicable state law. 26 U.S.C. § 9002(11). Commission regulations further define "qualified campaign expenses" to include candidate's "campaign-related" travel expenses. 11 C.F.R. § 9004.7 (1986). The Chicago trip occurred within the "expenditure report period" since Mr. Reagan had already been nominated. *See* 26 U.S.C. § 9002(12)(A); 11 C.F.R. § 9002.12(a). The White House, however, viewed the trip as official business. The government therefore paid for the trip and the expenses were not reported to the Commission.

On September 20, 1984, Common Cause filed with the Commission a complaint against Reagan–Bush '84, Mr. Reagan's principal authorized campaign committee. The complaint alleged that the expenses incurred in connection with the Chicago trip were "qualified campaign expenses," which Reagan–Bush '84 must pay for and report. Although notified of the complaint, Reagan–Bush '84 failed to report the trip's expenses. Instead, it filed a memorandum of law on October 29, 1984, in opposition to plaintiff's administrative complaint. On December 24, 1984, the Commission's Office of General Counsel, despite defendant's response, recommended that the Commission find "reason to believe" that Reagan–Bush '84 and its treasurer violated 2

U.S.C. § 434(b)(4) and 11 C.F.R. § 9003.1 and § 9004.7 in failing to report the trip's expenses.

The Commission chose not to follow the General Counsel's recommendation. On January 15, 1985 it voted four to two to find no reason to believe a violation had occurred, and it dismissed the complaint. The Commission did not issue a statement of reasons to accompany this order.

Common Cause then brought suit in this court on March 22, 1985. Plaintiff alleged that the Commission acted "contrary to law" when it dismissed Common Cause's administrative complaint. On October 23, 1985, we denied the Commission's motion to dismiss for lack of subject matter jurisdiction.[1] In its present motion for summary judgment, Common Cause seeks both a declaration that the Commission acted arbitrarily, capriciously and contrary to law and an order mandating the Commission to act on the allegations in the complaint.

### Discussion

■ It is appropriate at the outset to establish the framework for our consideration of the issues presented. First, plaintiff's petition allows only limited review by this court. Under 2 U.S.C. § 437g(a)(8), any aggrieved party may judicially challenge an order of the Federal Election Commission dismissing that party's administrative complaint. The court may declare that the Commission's dismissal is "contrary to law" and direct the Commission to conform with that declaration. § 437g(a)(8)(C). As both parties agree, the standard of review under this provision parallels that under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). In other words, our task is limited to determining whether the Commission's action was arbitrary, capricious, an abuse of discretion or otherwise contrary to law. Def. Memo. in Oppos. to Pl.Mot. and in Support of Def.Mot. (Def. Memo.) at 8–9; Pl. Oppos. at 2.

■ Second, this standard of review is a highly deferential one, which presumes

---

1, The Commission had contended that plaintiff's suit was not timely filed. We disagreed.

that the agency action is valid. *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981).[2]

■ Plaintiff's claim that the Commission acted arbitrarily and capriciously focuses primarily on the allegedly "unreasonable interpretation of the statute and regulations" that the dismissal reveals. Pl. Memo. in Support of Pl.Mot. (Pl.Memo.) at 1. Plaintiff contends that the Commission improperly rejected the General Counsel's proposed test for determining whether the travel expenses here were "campaign-related." Specifically, plaintiff argues, the Commission should have considered the "totality of the circumstances," and if it had indeed applied this test, it could not reasonably have dismissed plaintiff's complaint.

Plaintiff's emphasis on the "totality of the circumstances" is not surprising. It derives principally from the General Counsel's December 24, 1984 report to the Commission. In this report, the General Counsel recognized the paucity of precedent on the issue of what is "campaign-related." Ex. 1 to Def. Memo. at 4. He expressed his opinion, however, that:

> whether an event is 'campaign-related' depends upon the setting in which the remarks are made, the timing of the event at which the remarks are made, the reaction that the remarks evoke, as well as the remarks themselves. It would be compelling evidence that an event was campaign-related if, during an official's remarks, he expressly advocates his election or solicits contributions. This Office does not consider this an exhaustive list and does not believe that

any one factor is dispositive. Instead, many factors and circumstances of varying significance must be considered *and only the totality of the circumstances determines whether an event is 'campaign-related.'*

Def.Ex. 1 at 8 (emphasis supplied). The General Counsel concluded that the context and timing of the speech and the remarks themselves demonstrated sufficient cause to find "reason to believe" a violation of the federal election laws had occurred.

The Commission's decision to dismiss Common Cause's complaint is in flat disagreement with the General Counsel's analysis and recommendation. Plaintiff and defendant concur that the Commission did not consider the "totality of the circumstances" but instead focused on a "two-prong" test. According to both parties, the Commission looked only to see whether (1) the speech expressly advocated Mr. Reagan's reelection and (2) there was solicitation of campaign contributions. As we discuss below, however, defendant's reliance on the General Counsel's report as a rationale for the Commission's decision is misplaced. Similarly, we do not rely on the transcripts of the Commission's proceedings, to which plaintiff refers in identifying the legal standard actually applied.[3] Whether the Commission or key individual Commissioners in fact ignored the "totality of the circumstances" test in favor of the two-prong standard presents a difficult question.

We do not at this time need to decide this issue, however, because plaintiff is incorrect in assuming that we are at liberty to evaluate the merits of the legal standard

---

**2.** There is a marked difference between the presumption that an agency's action is valid and an agency's decision whether or not to prosecute as "presumed immune" from judicial review because of prosecutorial discretion. To the extent that defendant implies the latter, we reject it.

**3.** The authorities are divided over whether we may even look at the transcript. On the one hand, the absence of any statement of reasons, *see infra* pp. 291–292, has been held to justify examination of agency transcripts. *See Pan American World Airways, Inc. v. C.A.B.,* 684 F.2d 31, 36–37 n. 12 (D.C.Cir.1982). Yet on the other hand, the Court of Appeals rejected this very

justification on the ground that if an agency decision lacks a proper foundation in the record, the court's function "is emphatically *not* to supply one." *San Luis Obispo Mothers for Peace v. N.R.C.,* 751 F.2d 1287, 1326–27 & nn. 243–44 (D.C.Cir.1984), *rehearing en banc granted,* 760 F.2d 1320 (D.C.Cir.1985); *vacated in part, sub nom Kentucky Utilities Co. v. F.E.R.C.,* 760 F.2d 1321 (D.C.Cir.1985). A hasty perusal indicates they are inherently unreliable because they consist of informal, collegial interchanges which do not reflect the considered reasons for the Commission's decisions. They are not a part of this review.

the Commission used. The Commission's choice of a standard by which to identify "campaign-related" expenses involves indirect statutory interpretation on its part. The term "campaign-related"—the focus of plaintiff's claim of legal error—does not actually appear in the governing statute. The statute mentions only "qualified campaign expenses," defined as expenses incurred "to further the election" of the candidate. 26 U.S.C. § 9002(11). In implementing the statute, however the regulations interpret "qualified campaign expenses" in the context of travel. A Presidential candidate's authorized committee must report as "qualified campaign expenses" those travel expenditures "relating" to the campaign. 11 C.F.R. § 9004.7 (1986). Thus, the Commission's interpretation of the term "campaign-related" ultimately reflects its construction of the statutory phrase "to further" an election.

Consistent with our previous statement as to the limitations of our right to review, our review of the agency's interpretation of the statute, embodied in its construction of the term "campaign-related," is also quite limited. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court declared that if Congress "has directly spoken to the precise question at issue," both the agency and the court must yield to Congress' clear intent. 104 S.Ct. at 2781–82. Where, however, the statute is silent or ambiguous, the court may examine the agency's construction, but only for the limited purpose of determining "whether the agency's answer is based on a *permissible* construction of the statute." 104 S.Ct. at 2782 (emphasis supplied). In other words, "[t]he agency's construction is adequate if it falls within the permissible *range* of interpretations...." *Office of Consumers' Council, Ohio v. F.E.R.C.*, 783 F.2d 206, 218 (D.C. Cir.1986) (citing *Chevron*, 104 S.Ct. at 2782).

In the present case, Congressional intent does not direct our review. In enacting the Presidential Election Campaign Fund Act in 1971, Congress did not specify how it intended the phrase "to further the election" to be interpreted. Thus, we are free to inquire whether the two-prong standard advanced by the Commission represents a "permissible" construction of expenses incurred "to further" a candidate's election.

Plaintiff offers no evidence to support its claim that the two-prong test falls outside the "permissible range" of statutory interpretation. In providing for public financing of Presidential election campaigns, and for the corresponding reporting requirements, Congress intended generally "to take the Presidency off the big money auction block and put it where it traditionally belongs, in the public domain for all of the people." 117 Cong.Rec. 45,830 (1971) (statement of Sen. Eagleton). The Commission's focus on the two-prong test is consistent with this broad principle.

Plaintiff's attack on the legal standard which it claims that several Commissioners appear to have applied, in effect, represents a challenge to Commission policy. Plaintiff argues that any standard other than the "totality of the circumstances" would be "an open invitation to cynical circumvention of the law." Pl. Memo. at 23. We agree that the Commission's focus on just the contents of a speech, specifically express mention of the campaign and the solicitation of contributions, represents an extremely narrow standard. However, even if the two-prong interpretation does not carry the spirit of the statute as far as we might wish, we cannot substitute our own policy judgment.[4] "When a challenge to an agency construction of a statutory provision, fairly conceptualized, really cen-

---

4. As the Supreme Court has stated with respect to this particular statute: "the task for the [Court is] not to interpret the statute as it [thinks] best but rather the narrower inquiry into whether the Commission's construction [is] 'sufficiently reasonable' to be accepted by a reviewing court. (citations omitted). To satisfy the standard it is not necessary for a court to find that the agency's construction [is] the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *F.E.C. v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

ters on the wisdom of the agency's policy, rather than whether it is a reasonable choice within the gap left open by Congress, the challenge must fail." *Chevron*, 104 S.Ct. at 2793. Since we find that the two-prong test is a "reasonable choice," we cannot disturb that standard.

█ Our obligation to accept the legal standard applied by the Commission, however much we may disagree, does not end our inquiry. In determining whether an agency has acted arbitrarily or capriciously, a court must first determine whether the agency has presented a rational basis for its decision. The record before us prevents that threshold determination.

The legality of the Commission's dismissal of Common Cause's complaint depends on the precise reasons the Commission articulated to explain this action. In general, an agency may not act in silence: it must set forth clearly the grounds on which it acts. *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947); *Village of Winnetka v. F.E.R.C.*, 678 F.2d 354, 357 (D.C.Cir.1982). While the Federal Election Commission is not required to offer a separate statement of reasons where its rationale may be "gleaned" from staff reports, *see F.E.C. v. Democratic Senatorial Campaign Committee*, 454 U.S. at 38–39 n. 19, 102 S.Ct. at 45–46 n. 19; *Carter/Mondale Presidential Committee, Inc. v. F.E.C.*, 775 F.2d 1182, 1186–87 (D.C.Cir.1985), it nonetheless bears the burden of showing a "coherent and reasoned explanation of its exercise of discretion." *Carter/Mondale*, 775 F.2d at 1185.[5]

The Commission did not provide or attempt to provide a statement of reasons to support its dismissal of the Common Cause complaint. As plaintiff alleges and defendant does not dispute, the Commission sent Common Cause a form letter simply stating that the Commission had found no reason to believe a federal election law violation had occurred and that the file in this matter would be closed. Pl. Opp. at 3. Pursuant to its usual practice, the Commission did not issue an accompanying explanation.

Defendant now argues that the General Counsel's report suffices to show the Commission's reasoning. Yet this report is premised on the conclusion that the "totality of the circumstances" demonstrate that the VFW speech was "campaign-related." Defendant reads too much into this opinion in arguing that it sets out the two-prong test on which the Commission relied. The report recognizes express advocacy and solicitation of contributions as two relevant factors, but does not consider them to be "an exhaustive list." Def. Ex. 1 at 8. It would be difficult indeed to "glean" from this report a rationale that the speech was not "campaign-related" because it did not satisfy the elements of the two-prong test.

The Commission's attempt now to explain that the speech was not campaign-related does not suffice. The Commission reasonably finds that Mr. Reagan neither expressly mentioned his candidacy nor solicited contributions from the audience.[6] Yet this determination and the resulting conclusion that the speech was not "campaign-related" are first presented in the legal memoranda which defendant filed in this litigation. Such *post hoc* rationalization is clearly unacceptable. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *Ace Motor Freight, Inc. v. I.C.C.*, 557 F.2d 859, 864 (D.C.Cir.1977).

The absence of a contemporaneous statement of the Commission's reasons for dismissing the complaint precludes effective judicial review. Since we therefore cannot evaluate the agency's action on the record before us, we must vacate the Commission's order and remand for further proceedings. *EDF v. Costle*, 657 F.2d at 285.

---

5. Of course, Common Cause bears the ultimate burden of showing that the Commission acted arbitrarily and capriciously. *EDF v. Costle*, 657 F.2d 275, 283 n. 28 (D.C.Cir.1981).

6. Since the President's campaign qualified for public funding, he is prohibited from soliciting contributions.

■ The Commission must not only demonstrate its reasons for finding the speech was not campaign-related but, if it indeed applied the two-prong test, it must further explain why it did not consider the "totality of the circumstances." It is well-settled that when an agency departs from previous practice, it must provide some opinion or analysis indicating that prior policies are being deliberately changed, not casually ignored. *Greater Boston T.V. Corp. v. F.C.C.,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971); *Baltimore and Annapolis Railroad Co. v. W.M.A.T.C.,* 642 F.2d 1365, 1370 (D.C.Cir.1980). Defendant argues that application of the two-prong test here represents long-standing Commission practice. Defendant glosses over its earlier decisions too quickly.

A close reading of the Commission's Advisory Opinions (AO's) reveals that contrary to defendant's characterization, the Commission has not in fact always looked only to the two factors of express advocacy and solicitation. In AO 1984–13, 1 Fed. Election Campaign Fin. Guide (CCH) ¶ 5759 (May 17, 1984), the Commission considered whether the National Association of Manufacturers (NAM) would make an unlawful contribution or expenditure by inviting Republican Congressional candidates to speak at a conference cosponsored by NAM and scheduled to take place at the same time as the Republican National Convention. The Commission's decision that the candidates' appearances would be unlawful was based on its finding that the event "is thus linked by its *timing* and *purpose* to Congressional elections and carries partisan overtones." AO 1984–13 (emphasis added). This reasoning obviously goes beyond the two-prong test.[7]

Other AO's confirm this broad analysis. While the Commission certainly has looked to advocacy and solicitation as two key signs of campaign activity, the absence of these two elements represents only the principal, not the sole, condition for Commission approval. For example, in AO 1978–15, 1 Fed. Election Campaign Fin. Guide (CCH), ¶ 5304 (Mar. 30, 1978), the Commission authorized a candidate to continue as chairman of a charitable fundraising effort. Both the fact that the candidate had accepted this position before he decided to run and his lack of any role in distributing the brochure bearing his name and picture were "significant" to the Commission's decision. "Furthermore," the Commission conditioned its assent on the assumption that the other aspects of the drive would not involve express advocacy of the candidate's election or solicitation of contributions to his campaign. As the word "furthermore" suggests, the two-prong test represented an additional, not the only, consideration. *See also* AO 1983–23, 1 Fed.Election Campaign Fin.Guide (CCH) ¶ 5623 (Oct. 13, 1981) (Commission's approval of hospitality suite at the Republican National Convention "also" rested on its understanding that purpose was not to defray delegates' subsistence expenses and that sponsor would exercise full control).

The Commission's past practice of looking beyond the two factors of advocacy and solicitation necessitates some explanation for its dismissal of plaintiff's complaint. If the Commission indeed relied only on this two-prong test in considering plaintiff's complaint, it must clearly indicate this fact. More importantly, it should also set out why it did not consider other factors, as it has done in the past. We therefore remand both for an explanation of the legal standard actually applied and, as we discussed above, a statement of reasons demonstrating how the Commission applied such legal standard to the facts before it. On remand, the Commission is not foreclos-

---

**7.** Defendant fails meaningfully to distinguish the facts of AO 1984–13 from the facts of the present case. Defendant emphasizes that none of the candidates in AO 1984–13 were incumbents and thus the Commission's finding of partisan overtones is not applicable here. However, the issue is whether the *reasoning* of AO 1984–13, not the conclusion, is applicable to this case. Defendant has failed to show it is not. Footnote 3, which distinguishes "issue forums, hospitality rooms, testimonial dinners, and charitable functions" from the facts of AO 1984–13, merely clarifies that the holding of this AO does not apply to situations where the major purpose of the event is clearly something other than electioneering.

ed from reaching a different conclusion as to the merits of plaintiff's administrative complaint.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the supporting memoranda of points and authorities and the record herein, and for reasons set out in the accompanying memorandum opinion, it is by the court this 25th day of June, 1986,

ORDERED that plaintiff's motion is granted in part, and it is

ORDERED that defendant's motion is denied, and it is

ORDERED that plaintiff's complaint that Reagan–Bush '84 violated the federal election laws by failing to pay for and report the expenses of a trip by Ronald Reagan to Chicago in August 1984 is remanded to the Federal Election Commission for proceedings consistent with the accompanying memorandum opinion and, and it is

FURTHER ORDERED that this action shall be dismissed.