**NATIONAL RIFLE ASSOCIATION OF AMERICA, Appellant,**

v.

**FEDERAL ELECTION COMMISSION.**

No. 87–5373.

United States Court of Appeals, District of Columbia Circuit.

Argued May 13, 1988.

Decided Aug. 5, 1988.

Richard E. Gardiner, with whom A. Thomas Carroccio, Washington, D.C., was on the brief, for appellant.

Jacqueline Jones–Smith, Atty., Federal Election Com'n, with whom Lawrence M. Noble, Gen. Counsel and Richard B. Bader, Associate Gen. Counsel, Federal Election Com'n, Washington, D.C., were on the brief, for appellee.

Before STARR, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This appeal involves a lawsuit filed under the Federal Election Campaign Act, 2 U.S. C. §§ 431–455 (1982). The action arises out of protracted warfare before the Federal Election Commission pitting the National Rifle Association (NRA) against an organization whose animating purposes are decidedly unfriendly to those championed by the NRA. Specifically, the NRA challenges the District Court's order dismissing its action seeking review of a Federal Election Commission decision concerning the third (and last) in a series of administrative complaints filed by the NRA against Hand-

gun Control, Inc. (HCI) and the latter's separate political fund, Handgun Control Political Action Committee (HCI–PAC). The District Court found that the NRA's third administrative complaint was "substantially similar" to its second administrative complaint; since the NRA had indisputably failed to seek judicial review of the FEC's dismissal of the second complaint within the sixty day period allowed by the pertinent statutory provision, *id.* § 437g(a)(8)(B), the court concluded that the NRA's federal court action was time-barred.

On appeal, the NRA advances three contentions: *first,* that its second and third administrative complaints were not substantially similar; *second,* that regardless of the two complaints' similarity, the FEC addressed the merits of the third complaint, thereby reopening the issues and rendering a decision subject to judicial review; and *third,* that the FEC erred in deeming HCI to be a membership organization within the meaning of 2 U.S.C. § 441b(b)(4)(C) and hence not in violation of the Act.[1]

For the reasons that follow, we conclude that the two administrative complaints were indeed substantially similar but that the FEC addressed the merits of the third complaint, thereby potentially subjecting those issues to judicial review. We further conclude, however, that the NRA's failure to raise the reopening argument in the District Court precludes it from advancing the argument here. We therefore affirm the District Court's judgment dismissing the action.

I

This case stems from three administrative complaints filed by the NRA against

1. The NRA suggests two additional grounds for reversing the District Court: *first,* that the District Court should have viewed this case as raising *res judicata* issues, rather than a statute of limitations case, and that *res judicata* does not bar the NRA's third complaint; and, *second,* that neither *res judicata* nor collateral estoppel bars judicial review of the FEC's decision since the Commission failed to plead them in its answer as required by Fed.R.Civ.P. 8(c). There is no need to address these arguments for the straightforward reason that the Commission has never even argued that *res judicata* or collateral estoppel bars review of the agency's decision.

HCI [2] between 1983 and 1985. NRA's first complaint, filed in December 1983, alleged that HCI had violated the Act's solicitation restrictions. Letter from Janet Scherer, NRA Assistant General Counsel, to Charles Steele, FEC General Counsel (Dec. 1, 1983), Joint Appendix (J.A.) at 32. Specifically, the NRA alleged that HCI had solicited contributions in violation of 2 U.S. C. § 441b(b)(4)(A)(i).[3] HCI responded that the individuals from whom it had solicited funds were "members" who could legally be solicited pursuant to section 441b(b)(4)(C).[4] The NRA countered that HCI was not a "membership organization" as construed by the Supreme Court in *Federal Election Commission v. National Right to Work Committee*, 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982).

In March 1984, the Commission brushed aside HCI's arguments and found reason to believe that it had indeed violated section 441b(b)(4)(A). *In the Matter of Handgun Control, Inc.* MUR 1604 (Mar. 21, 1984), J.A. at 50. The Commission subsequently approved a negotiated conciliation agreement with HCI resolving the matter. *In the Matter of Handgun Control, Inc.* MUR 1604 (July 6, 1984), J.A. at 51. The conciliation agreement required HCI to pay a $15,000 civil penalty and to amend the group's bylaws so as to qualify HCI as a membership organization prior to its soliciting additional funds. *In the Matter of Handgun Control, Inc.* MUR 1604 (July 10, 1984), J.A. at 55–56. The agreement

required the amended bylaws to establish (1) a predetermined minimum amount of periodic dues or contributions; (2) the right of members to participate in annual meetings; and (3) the right "to elect a Director to the Governing Board of HCI." *Id.*

The NRA filed its second administrative complaint in February 1985, alleging that HCI had "solicited contributions in violation of 2 U.S.C. § 441b(b)(4) and in knowing violation of the conciliation agreement." Letter from Janet Scherer to Charles Steele (Jan. 28, 1985), J.A. at 58.[5] The NRA charged, first, that HCI had improperly solicited individuals who had not made contributions to it after HCI amended its bylaws, pursuant to the conciliation agreement, to become a membership organization. *Id.* at 59.[6] Second, the NRA contended that HCI's amended bylaws were still inadequate for the entity to pass muster as a membership organization. According to the NRA, the amended bylaws were deficient in two respects: (1) they failed to establish the right of HCI's contributors to participate in the annual membership meeting because "there [was] no requirement that any business of any sort be conducted at the annual meeting"; *id.* at 60; (2) members did not have the right to elect a director to the Governing Board because they could only vote for "someone who [had] been preselected by the Board," and HCI's Governing Board retained the "power to remove any director without cause,"

**2.** The complaints filed by NRA alleged that both HCI and HCI–PAC violated the Act. Our opinion will refer to the groups collectively as "HCI."

**3.** Section 441b(b)(4)(A)(i), provides that a corporation or a separate fund established by a corporation may only solicit contributions to such a fund from its stockholders and their families and its executive or administrative personnel and their families.

**4.** Section 441b(b)(4)(C) creates an exception to the prohibition in section 441b(b)(4)(A)(i). Subsection (C) provides that a membership organization, cooperative, or corporation without capital stock, or a separate fund established by one of these entities, may solicit contributions to such a fund from members of the organization, cooperative, or corporation without capital stock.

**5.** The solicitation triggering the second complaint was a letter requesting contributions to HCI–PAC in October 1984.

**6.** After entry of the conciliation agreement, HCI classified as a member "anyone who has contributed no less than 15 dollars to the organization within the last 24 months." HCI By–Laws, Article VI, J.A. at 63–64. The NRA challenged this retroactive application of the predetermined dues requirement, arguing that under the FEC's interpretation of the Act, membership in an organization entails the knowing taking of "some affirmative steps to become a member of the organization." Second Complaint, J.A. at 59; *see also* FEC Advisory Opinions 1977–67, 1979–69, 1984–22, and 1884–33; Conciliation Agreement, J.A. at 53.

including the "preselected candidate chosen by the 'membership.'" *Id.* at 60–61.

In May 1985, the Commission's General Counsel submitted his report on the merits of NRA's second administrative complaint to the Commission.[7] The General Counsel concluded that HCI's amended bylaws had "satisfactorily established rights of participation in the organization's affairs for those deemed members of the corporation." Gen.Couns.Report MUR 1891 (May 1, 1985), J.A. at 76. With respect to the allegedly unlawful solicitation, however, the General Counsel recommended that the Commission find reason to believe that HCI had violated section 441b(b)(4) by soliciting, as members, individuals who had not contributed to HCI after it amended its bylaws. *Id.* at 76–77. Having found reason to believe a violation existed, the General Counsel nonetheless recommended that, by virtue of certain mitigating factors which need not be rehearsed here, the Commission should take no further action. *Id.* at 77.

The FEC adopted the General Counsel's recommendations and dismissed the complaint. *In the Matter of Handgun Control, Inc.* MUR 1891 (May 8, 1985), J.A. at 79. In its notice to the NRA, the Commission stated that "[t]he Federal Election Campaign Act allows a complainant to seek judicial review of the Commission's dismissal of this action. *See* 2 U.S.C.

§ 437g(a)(8)." Letter from Charles Steele to Janet Scherer (May 15, 1985), J.A. at 80.[8] Critically for our purposes, the NRA elected not to seek review of that dismissal.

Finally, the NRA filed its third administrative complaint in December 1985. In this complaint, the NRA once again alleged that HCI had "solicited contributions in violation of 2 U.S.C. § 441b(4) [*sic* ]"[9] inasmuch as HCI's amended bylaws still failed to qualify it as a membership organization.[10] Letter from Janet Scherer to Charles Steele (Dec. 17, 1985), J.A. at 81. Specifically, the NRA alleged that "the By-laws of HCI do not establish any right to participate in [the annual meeting] ... in that there is no requirement that any business of any sort be conducted at the annual meeting." *Id.* at 82. Such a right should exist, the NRA argued, since "shareholders of business corporations—to which the Supreme Court analogized members of nonprofit corporations—have the right to conduct the business of the corporation by participating in an annual meeting of shareholders." *Id.* at 82–83. The NRA sought to bolster its allegation by charging that HCI's annual meeting, dubbed by HCI as "The Handgun Control Conference," did not comport with the requirements for an annual meeting under the D.C. Code. *Id.* at 83. The NRA also alleged, once again, that "HCI's By–Laws [did] not establish a

7. Complaints submitted to the FEC are reviewed first by the General Counsel, who evaluates the allegations and submits a report containing his recommended resolution to the full Commission. These reports provide the substantive basis for the Commission's actions. FEC Brief at 6 n. 6 (citing *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 38 n. 19, 102 S.Ct. 38, 45 n. 19, 70 L.Ed.2d 23 (1981); *Carter/Mondale Presidential Comm. v. FEC*, 775 F.2d 1182, 1186–87 & n. 2 (D.C.Cir.1985).

8. Section 437g(a)(8) authorizes a district court, upon petition by an administrative complainant, to declare "an order of the Commission dismissing a complaint" to be "contrary to law" and to "direct the Commission to conform with such declaration within 30 days." 2 U.S.C. § 437g(a)(8)(A), (C). As we mentioned at the very outset, such a petition must be filed within 60 days after the date of the dismissal. *Id.* § 437g(a)(8)(B).

9. The complaint also alleged that HCI had made corporate contributions to HCI–PAC in violation of section 441b, 2 U.S.C. § 441b, and that HCI–PAC had knowingly entered false information on its reports to the Commission in violation of 18 U.S.C. § 1001 (1982). The General Counsel determined that the latter provision is not within the Commission's jurisdiction, but that there was reason to believe HCI/HCI–PAC had violated section 441b(a). Gen.Couns.Report MUR 2115 (Feb. 18, 1986), J.A. at 124. The FEC adopted the General Counsel's recommendations, and in June 1986, accepted a negotiated conciliation agreement in settlement of the complaint. *In the Matter of Handgun Control, Inc.* MUR 2115 (Feb. 21, 1986), J.A. at 125; Letter from Charles Steele to Janet Scherer (June 24, 1986), J.A. at 126. Neither of these issues is before us.

10. The solicitation that triggered the NRA's third complaint was a letter requesting contributions dated September 1985.

procedure for its 'members' to control the organization by electing directors" because they could only vote for "someone who [had] been pre-selected by the Board" and HCI's Governing Board could remove any director, including the "one 'elected' Board member." *Id.* at 83–84.

In his report to the Commission, the General Counsel found that the two asserted grounds for NRA's charge (that HCI failed to qualify as a membership organization) were "virtually identical to those raised in [the second complaint]." Gen.Couns.Report MUR 2115 (Feb. 18, 1986), J.A. at 120. The General Counsel explained:

> Although the complainant now raises the novel arguments that HCI's annual membership meeting was not an 'annual meeting' as contemplated by [the] D.C. Code, and that because of the Supreme Court's analogy to stockholders[,] members should have the right to participate in annual meetings by conducting business, it is this office's view that such arguments are without merit.

*Id.* Once again, the Commission adopted the General Counsel's recommendation and found no reason to believe that HCI had violated section 441b(b)(4)(A)(i). *In the Matter of Handgun Control, Inc.* MUR 2115 (Feb. 21, 1986), J.A. at 125.

In August 1986, the NRA filed an action in federal district court seeking review of the Commission's dismissal of the section 441b(b)(4) allegation in the third administrative complaint. The District Court, however, dismissed the complaint for lack of subject matter jurisdiction. The Court reasoned that "[i]t is apparent that the issues and facts in all three complaints are substantially similar. More importantly, however, it is clear that plaintiff failed to appeal the defendant's decision on the second complaint within the time-period allowed by

law. 2 U.S.C. § 437g(a)(8)(B). Hence, the Court is without jurisdiction...." *National Rifle Association v. Federal Election Commission*, No. 86–2285, Order at 2 (D.D.C. Oct. 19, 1987), J.A. at 129 [available on WESTLAW, 1987 WL19221]. This appeal followed.

## II

■ Under the Federal Election Campaign Act, any party "aggrieved by an order of the Commission dismissing a complaint filed by such party" may file a petition for review. 2 U.S.C. § 437g(a)(8)(A). As we observed earlier, however, the Act further specifies that petitions for review must be filed "within 60 days after the date of the dismissal." *Id.* § 437g(a)(8)(B). This limitations period is "jurisdictional and unalterable." *Carter/Mondale Presidential Committee v. Federal Election Committee*, 711 F.2d 279, 283 (D.C.Cir. 1983). The limit thus cannot be circumvented by "procedural devices." In particular, a party who has failed to file for review within the prescribed limitations period cannot obtain a new filing period by the simple expedient of filing a new request for the same agency action. The issue before us is whether the NRA's third administrative complaint was, in pertinent part, merely a "procedural device" to obtain review of the issues already resolved by the FEC in NRA's unappealed from second complaint.

■ The FEC argues that the second and third complaints were "substantially similar." The Commission relies, first, on the NRA's "candid concession" in the third complaint itself that the allegations were being brought at that time because the NRA believed it could not seek review of the issues in the previous complaint. *See* Third Complaint, J.A. at 81 n. 1.[11]

---

11. The NRA argued in its third complaint, and continues to maintain here, that "[j]udicial review of NRA's [second complaint] was not possible since that complaint alleged only that HCI failed to comply with the Conciliation Agreement entered into [in response to the first complaint] and the Agreement had been complied with." Third Complaint, J.A. at 81 n. 1; NRA Brief at 17 n. 2; NRA Reply Brief at 10–12.

This argument will not withstand scrutiny. The plain language of the second complaint indicates that the NRA alleged a violation of *both* the conciliation agreement and the Act. *See infra* p. 1336. More importantly, the NRA filed its complaint pursuant to section 437g(a)(1). The statute explicitly provides that dismissal of any complaint filed pursuant to section 437g(a)(1) shall be reviewable in the

The FEC then observes that the NRA alleged in both complaints that HCI violated the Act for the same reason: "the changes made to HCI's bylaws pursuant to the conciliation agreement were inadequate to qualify HCI as a membership organization within the meaning of 2 U.S.C. § 441b(b)(4)(C)." FEC Brief at 13. Specifically, the Commission contends that both complaints pointed to the same infirmities in HCI's bylaws: (1) the bylaws failed to provide for the conduct of corporate business at HCI's annual meetings; and (2) the bylaws conferred only illusory election rights upon members because they could only vote for a director from a pre-selected slate of candidates and HCI's Board retained the right to remove directors at will.

The NRA, in contrast, argues that the second and third complaints were not "substantially similar." According to the NRA, its second complaint challenged only HCI's compliance with the 1984 conciliation agreement. The second complaint further alleged that by virtue of HCI's failure to comply with the conciliation agreement, HCI did not qualify as a membership organization at the time it solicited contributions and thereby violated the Act. The third complaint, NRA contends, "clearly addressed issues separate and apart from those involved in the second administrative complaint and involved facts which had not yet arisen [at the time of the second complaint] and therefore could not have been raised in NRA's second administrative complaint." NRA Brief at 15–16. The principal "separate issue and fact" in the third complaint involves the actual conduct of HCI's annual meeting, the Handgun Control Conference.[12]

A careful reading of the two complaints reveals that the NRA's allegations did not materially vary. In effect, the third complaint gave specificity and concreteness to the allegations already advanced in the second complaint; that is, the final complaint supported the allegations of the second complaint with factual predicates. The reader will recall that the NRA had argued in its second complaint that HCI's bylaws were deficient in that there was no requirement that any business of any sort be conducted at the annual meeting. In its third complaint, NRA alleged that at HCI's annual meeting, no corporate business was in fact conducted. This latter complaint said, in essence, "we told you so, because look at what happened." This, upon analysis, served essentially to bolster the NRA's earlier argument to the effect that HCI's

district court within 60 days. 2 U.S.C. § 437g(a)(8)(A). The fact that the conciliation agreement was involved in no wise precluded an appeal from dismissal of an alleged statutory violation.

**12.** The NRA points to three other alleged differences between the second and third complaints, all of which are inefficacious. The first, the fact that the third complaint was predicated on a new solicitation by HCI, does not distinguish the two complaints since the NRA alleged that the new solicitation was unlawful for the same reasons as the solicitation involved in the second complaint. As the FEC put it, "[t]he two solicitations about which NRA complained were 'merely different instances stemming from the same underlying dispute' about HCI's status as a membership organization." FEC Brief at 14 (quoting *Pipe Trades Council, Local 159 v. Underground Contractors Ass'n*, 835 F.2d 1275, 1281 (9th Cir.1987)). The second asserted distinction, namely, the second complaint's reliance on the D.C. Code and the Supreme Court's decision in *FEC v. Nat'l Right to Work Comm.*, 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982), in fact constituted nothing more than new authority for the same legal argument: that HCI did not qualify as a membership organization under the Act.

Finally, in its reply brief the NRA argues that the second complaint dealt with the question of whether HCI had adhered to the terms of the conciliation agreement which provided only for a procedure to elect a single director, while the third complaint "raised the additional, and much broader, question of whether HCI's bylaws were inadequate under the Act since the bylaws failed to establish a procedure for members to control the organization through the election of *all* directors." NRA Reply Brief at 7. This is simply not true. Nowhere in the third complaint does the NRA allege that the Act requires a procedure for the election of *all* directors; rather, the complaint states only that "HCI's By-Laws do not establish a procedure for its 'members' to control the organization by electing directors" as contemplated by the Act. J.A. at 83. The third complaint then raises precisely the same features of HCI's election scheme that were criticized in the second complaint. Reading the allegations as a whole, it is clear that the legal challenge in both complaints was the same.

bylaws provided insufficient participation rights. And in that regard, the FEC had already determined (in response to the second complaint) that the annual meeting provided for in the bylaws satisfied the Act's requirements, even though that meeting might involve no business of any sort.

Similarly unpersuasive is the NRA's argument that the two complaints involved "distinct legal issues" inasmuch as the second complaint challenged HCI's compliance with the conciliation agreement, whereas the third complaint alleged a violation of the Act. This is sleight-of-hand reasoning. For one thing, the second complaint specifically alleged that HCI "has solicited contributions in violation of [the Act]." Second Complaint, J.A. at 58. The complaint then concludes by asserting that "HCI has also unlawfully solicited contributions ... from individuals who do not constitute members of HCI within the meaning of the [Act and the FEC's interpretive regulations.]" *Id.* at 61. For another, the conciliation agreement served as the vehicle for bringing HCI into compliance with statutory requirements. An allegation that HCI failed to comply with the conciliation agreement, given the nature of that agreement, also served as an allegation that the organization failed to comply with the Act itself.

In sum, the second and third NRA complaints are substantially similar by virtue of the fact that the legal question posed by both was the same: whether an organization that does not provide for an annual meeting at which members may participate in the conduct of corporate business may qualify as a membership organization under section 441b(b)(4)(C). This was, as Yogi Berra is reputed to have said, *"déjà vu* all over again." Having raised that issue in the second complaint and failed to

appeal the Commission's order, the NRA cannot obtain judicial review of the issue by the expedient of bringing it (albeit in a more concrete context) before the FEC once again.

### III

■ The NRA argues that even if the complaints are substantially similar, judicial review is not precluded because the FEC addressed the merits of the third complaint and thereby rendered a decision subject to appeal. NRA Brief at 18–21. The point is not without force. Although the General Counsel's report on the third complaint observed that "the allegations raised by the [NRA] are virtually identical to those raised in [the second complaint]," it proceeded, gratuitously, to address and resolve the merits of each claim. *See* Gen. Couns.Report MUR 2115 (Feb. 18, 1986), J.A. at 120–22. By doing so, the General Counsel rendered an appealable decision on the merits. *See, e.g., Poulin v. Bowen,* 817 F.2d 865, 869 (D.C.Cir.1987) (by discretionary reopening, agency waives *res judicata;* decision is subject to judicial review to extent of reopening); *Jelinek v. Heckler,* 764 F.2d 507, 508 (8th Cir.1985) (where claim reconsidered on merits, treated as a matter of discretionary reopening and consequently subject to review).[13]

This does not mean, however, that the District Court erred in dismissing the NRA's complaint, for the FEC vigorously argues that the NRA failed to raise the reopening argument below. That is, the NRA failed to argue in response to the Commission's motion to dismiss (for lack of subject matter jurisdiction) that the General Counsel's full discussion of the merits operated to reopen the issues.[14] Having

**13.** In defense of the General Counsel's failure to dismiss the NRA's complaint *ab initio* as merely a rehash of the NRA's second complaint, the FEC argues that the Report merely followed the "standard format for such reports" by describing the complainant's "contentions." FEC Brief at 19. This lame defense of the General Counsel's extended ruminations is belied by the fact that his report went beyond a simple description of the NRA's allegations; it proceeded to address the merits of each issue raised. Al-

though a full report by the General Counsel may well be the standard procedure for handling complaints, to the extent that such reports address the merits of the issues presented, they subject those issues to judicial review.

**14.** As the NRA points out, the FEC was no quicker at the switch. In its answer to the NRA's complaint, the Commission failed to raise the waiver issue and indeed, in its pleadings, acknowledged the existence of jurisdiction. It was only when the FEC moved to dismiss that

waived the reopening argument, the FEC argues, the NRA is precluded from raising it now. In response, the NRA maintains that the reopening argument is a legal question, necessitating no factual development for its resolution, and thus may properly be considered on appeal. NRA Reply Brief at 15–16.

The NRA's argument misses the point, which is that its failure to interpose the argument works a waiver of it. An examination of the district court record shows beyond question that the NRA failed to assert the Commission's reopening of the issues as a basis for the District Court's subject matter jurisdiction. Instead of contending that the General Counsel's disposition of the issues in the second complaint gave rise to an appealable decision, the NRA placed exclusive reliance on the (unmeritorious) argument that the complaints were not identical. *See* Memorandum of Points and Authorities in Support of the NRA's Motion for Summary Judgment and in Opposition to Motion of the FEC at 5–8, FEC Supplemental Appendix (S.A.) at 3–6; NRA's Response to the FEC's Opposition to NRA's Motion for Summary Judgment at 2–8, S.A. at 8–14. Having failed to raise the reopening argument as the basis for jurisdiction in the District Court, the NRA is not at liberty to raise it for the first time on appeal. *See, e.g., Farrow v. Cahill,* 663 F.2d 201, 206 (D.C.Cir.1980) (" '[A] claimant ordinarily cannot expect to lose in the trial court on one theory but win on appeal under another.' " (quoting *Browzin v. Catholic University of America,* 527 F.2d 843, 850 n. 15 (D.C.Cir.1975)).

This should come as no surprise. Litigation is, or at least should be, an orderly process, consistent with rules of procedure aimed at securing a just and expeditious resolution of disputes. *See* Fed.R.Civ.P. 1. And one venerable, and eminently sensible,

rule of the litigation road is that latter-day inspirations on the part of appellants in the Court of Appeals come too late in the litigation process. Specifically, the time for an appellant to press arguments in favor of a district court's jurisdiction is in the district court; otherwise, appellate judges may find themselves presented with a quite improper invitation by the losing party to transmogrify themselves into an ersatz version of a three-judge district court. That, upon reflection, is precisely what the NRA is asking of us. For our part, we are obliged to respond, with regrets, to the invitation to become somehow, *mutatis mutandis,* an adjunct to the distinguished United States District Court of this district.

## IV

For the foregoing reasons, we conclude that the issues in the NRA's third complaint were substantially similar to those in its second complaint, thereby rendering the NRA's complaint seeking judicial review untimely. We further conclude that, since the NRA failed to allege reopening as the basis for the District Court's jurisdiction, it is precluded from raising that argument on appeal. The judgment of the District Court is therefore

*Affirmed.*

---

the FEC was moved to argue that review of the issues raised in the third complaint was barred. The Commission's failure to raise the jurisdictional argument in its answer is not, of course, determinative, inasmuch as the issue of subject matter jurisdiction cannot be waived and can thus be raised at any time. *See, e.g., Walters v. Secretary of Defense,* 725 F.2d 107, 112 n. 12 (D.C.Cir.1983); *Int'l Ladies' Garment Workers' Union v. Donovan,* 722 F.2d 795, 806 (D.C.Cir. 1983), appeal after remand, 733 F.2d 920 (D.C. Cir.1984), cert. denied, 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984).