STATE of New York, the New York State Department of Social Services, and Cesar A. Perales, Commissioner of the New York State Department of Social Services, Plaintiffs,

v.

Louis W. SULLIVAN, M.D., United States Secretary of Health and Human Services, and the U.S. Department of Health and Human Services, Defendants.

No. 89–CV–817.

United States District Court, N.D. New York.

Oct. 6, 1992.

**753**

Robert Abrams, Atty. Gen. of the State of New York, Albany (Edward M. Scher, Asst. Atty. Gen., of counsel), for plaintiffs.

Gary L. Sharpe, U.S. Atty., N.D. New York, Albany (Paul D. Silver, Asst. U.S. Atty., of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court are cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. The court heard oral argument on November 28, 1991 in Albany, New York. For the reasons stated below, the court grants defendants' cross-motion for summary judgment and denies plaintiffs' motion.

## I. BACKGROUND

This action is premised on defendants' refusal to reimburse plaintiffs for certain expenditures incurred in administering Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., ("Title XIX" or "Medicaid"). The complaint asserts the existence of a federal question as the basis for jurisdiction. 28 U.S.C. §§ 1331, 1361.

Pursuant to Title XIX, New York State is entitled to submit claims for reimbursement to the federal government to defray certain expenditures in administering the Medicaid program within its borders. A two-year statute of limitations for the presentation of such claims is imposed by 42 U.S.C. § 1320b–2, with certain exceptions, which include the "audit exception." On December 5, 1986, the New York State Department of Social Services submitted claims that were over two years old, arguing, nonetheless, that their payment was justified under the "audit exception." The United States Department of Health and Human Services ("HHS") rejected these claims as untimely.

The subject claims were submitted to the Health Care Financing Administration ("HCFA"), a branch of HHS, as part of the New York State auditing process known as the Shares Reclassification System ("SRS"). SRS consists of a method of comparing state and federal computer-generated files for purposes of ascertaining state Medicaid expenditures which were initially mischaracterized as ineligible for federal funding. The audit in question determined that there should have been a reduction in the dollar value of all of the claims analyzed, but that the overall reduction should have been offset by a limited upward adjustment of $873,607, consisting of Medicaid expenditures incurred between July 1, 1983 and December 31, 1983. While the downward adjustment was accepted by the HCFA, the limited upward adjustment was disallowed. This decision was then appealed to HHS's Departmental Appeals Board ("DAB").[1] The DAB affirmed the HCFA's decision on September 1, 1988, finding:

1. The state audit was a true audit.

2. An audit which serves as the subject matter of the "audit exception" may be either a federal or state audit. Accordingly, New York's audit qualified for consideration under the "audit exception."

3. In order for the "audit exception" to be activated, it is necessary that the Federal Government accept the late claims. In support of this conclusion, the DAB noted the wording of 45 C.F.R. 95.4 which defines "audit exception" as "a proposed adjustment by the responsible Federal agency to any expenditure claimed by a State by virtue of an audit."

4. There were no actions taken by defendants which demonstrated their acceptance of the disputed claims. HCFA's acceptance of the downward adjustments did not, on that basis alone, compel the Board to accept any untimely upward adjustments.

5. The "audit exception" only applies if it is first demonstrated that "extreme situations" are involved, whereby it

---

1. At the time of the appeal, the name of the reviewing body was the Departmental Grant Appeals Board, which was subsequently changed to the Departmental Appeals Board, without change in structure or function.

would be "patently unfair to a state to outlaw its claim merely because of the passage of time." Plaintiffs disputed claims were found not to be submitted under "extreme circumstances." Exhibit ("Exh.") 1 attached to Document ("Doc.") 3, at 2–10.

By summons and complaint filed in this court on June 27, 1989, the State alleges that the decisions of the HCFA and the DAB violate the Social Security Act. The State served interrogatories and requests for production of documents, and defendants responded with a motion to preclude discovery. In anticipation of bringing the instant motions, plaintiffs agreed to withdraw their discovery demands, without prejudice. Defendants thereafter withdrew their motion to preclude discovery, without prejudice. The parties have now cross-moved for summary judgment. In the alternative, plaintiffs seek an order compelling defendants to provide affidavits explaining why the HCFA denied audit exception treatment for the subject upward adjustment.

Both parties agree that the only issue before the court regarding the cross-motions for summary judgment is whether the DAB's determination that the proposed upward adjustment of $873,607 did not fall under the "audit exception" of 42 U.S.C. § 1320b–2(a),[2] complies with the meaning and intent of the statute. See Plaintiffs' Memorandum of Law, Doc. 11, at 7–8; Defendants' Memorandum of Law, Doc. 13, at 3. Both parties also agree that the scope of judicial review of the DAB's action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

Plaintiffs argue that the decision of the DAB should be overturned because it violates three separate subsections of the APA. Specifically, it violates subsection (2)(A) by virtue of being arbitrary, capricious, and otherwise not in accordance with law; it violates subsection (2)(C) by virtue of being in excess of statutory jurisdiction, authority, or limitations; and it violates subsection (2)(D) by virtue of failing to observe the procedure required by law. 5 U.S.C. § 706.

Substantively, plaintiffs object to the DAB's consideration of whether the State's tardiness in making the claim was due *solely* to "extreme circumstances." Plaintiffs contend that such an analysis is not required, nor permitted, by the language of 42 U.S.C. § 1320b–2 or 45 C.F.R. § 95.4,[3] and its use is therefore arbitrary as a matter of law. These provisions do not mention the term "extreme circumstances," nor do they state that the existence of such circumstances is a condition precedent to the invocation of the "audit exception." Plaintiffs contend that use of the "extreme circumstances" rationale might be appropriate in applying the "good cause" exception of 42 U.S.C. § 1320b–2(b),[4] but not in applying the "audit" exception of § 1320b–2(a). The use of this standard is tantamount to improper legislating by defendants, plaintiffs contend, rather than the proper administrative interpretation of a

---

**2.** Section 1320b–2(a) provides:

[A]ny claim by a State for payment with respect to an expenditure made during any calendar quarter by the State in carrying out [Medicaid] shall be filed … within the two-year period which begins on the first day of the calendar quarter immediately following such calendar quarter; and payment shall not be made under this chapter on account of any such expenditure if claim therefor is not made within such two-year period; except that this subsection shall not be applied so as to deny payment with respect to any expenditure involving court-ordered retroactive payments or audit exceptions, or adjustments to prior year costs.

**3.** Section 95.4 defines "audit exception" as "a proposed adjustment by the responsible Federal agency to any expenditure claimed by a State by virtue of an audit."

**4.** Section 1320b–2(b) provides:

The Secretary shall waive the requirement imposed under subsection (a) of this section with respect to the filing of any claim if he determines (in accordance with regulations) that there was good cause for the failure by the State to file such claim within the period prescribed under subsection (a) of this section. Any such waiver shall be only for such additional period of time as may be necessary to provide the State with a reasonable opportunity to file such claim. A failure to file a claim within such time period which is attributable to neglect or administrative inadequacies shall be deemed not to be for good cause.

regulation. As such, plaintiffs argue that the decision of the DAB rejecting the upward adjustment because the audit did not stem from an extreme situation is invalid and their motion for summary judgment should be granted.

Plaintiffs also argue that, absent an analysis of whether "extreme circumstances" caused the State's filing of the late reimbursement claim, the government is constrained to consider only the actual wording of the Social Security Act and its implementing regulations to determine whether the State's reimbursement claim was valid. Such an analysis would require that the federal government grant "audit exception" treatment to the disputed claims because defendants approved of: (1) the substantive nature of the claims considered by the audit, (2) the method of analysis adopted by the audit, and (3) the accuracy of the audit's claims by accepting the accuracy of the entire audit. According to plaintiffs, "the presentation of an audit constitutes a self-operative mechanism allowing the triggering of the 'audit exception.'" Plaintiffs' Memorandum of Law, Doc. 11, at 19. In accepting the downward adjustment by the State, plaintiffs argue that the HCFA thereby accepted the accuracy of the entire audit in issue because there was no way, without requesting more data, in which to distinguish the claims constituting the upward, as opposed to downward, adjustment. This is so because the audit in question is unique; the nature of the analysis engaged in by defendants to assure the correct amount of the refund was necessarily the very same analysis they would have had to conduct to determine the accuracy of the amounts for which plaintiffs sought audit exception treatment. Such an analysis revolves around establishing the validity of the audit process. As a result, plaintiffs contend that defendants' acceptance of the amount of the upward adjustment necessarily implied their acceptance of the accuracy of the audit methodology (which was the only valid objection to denying "audit exception" treatment).

Last, plaintiffs contend that even if the court denies their motion for summary judgment, it should compel defendants to specify the reasons for rejecting the upward adjustment under the audit exception. It is not sufficient, plaintiffs argue, for the HCFA to deny the adjustment solely on the basis that the statute of limitations expired, as this would make the audit exception meaningless.

Defendants contend that "great weight" must be accorded a government agency's interpretation of its governing statute, *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 403–04, 107 S.Ct. 750, 759, 93 L.Ed.2d 757 (1987) (quoting *Investment Company Institute v. Camp,* 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971)), and an agency's interpretation may not be rejected unless it is "manifestly contrary" to the statute, *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Furthermore, defendants assert that where a statute explicitly delegates "substantive authority" to the Secretary for rule-making and interpretation of the statute, the Secretary's regulations are entitled to a higher standard of deference by the court. Since Congress explicitly delegated substantive authority to the Secretary of HHS for the rule-making necessary to implement the statutory provisions involved in the case at bar, defendants allege that the Secretary's regulations at 45 C.F.R. §§ 95.7–95.34 are entitled to the higher standard of deference and must be upheld absent a finding that they are "arbitrary or capricious."

Defendants further argue that the decisions of the HCFA and the DAB finding that the claims in question do not come under the audit exception, defined by 45 C.F.R. § 95.4 as "a proposed adjustment by the responsible Federal agency to any expenditure claimed by a state by virtue of an audit," were not arbitrary and capricious. Based on this definition, defendants contend that the Secretary of HHS has reserved for himself the authority to accept or reject late filings based on state audits. Thus, the critical fact is not whether there is an audit, but whether the federal government accepts it. Defendants cite to a por-

tion of the DAB's decision addressing this point:

The regulation makes it clear that a proposed adjustment to claims for prior year costs based on a state audit is not enough to constitute an 'audit exception.' The federal government—the responsible federal agency—must propose to make an adjustment in the claims for prior years. Only then does the statute of limitations not run on the time for filing or amending such claims.

Exh. 1 attached to Doc. 3, at 4 (quoting *New York State Dep't of Social Services,* DAB Dec. No. 521, at 7 (1984)). According to defendants, there has been no such proposed adjustment by the HCFA in the case at bar. On the contrary, this dispute arose solely because the HCFA rejected the State's proposed adjustment by disallowing the State's claims. Furthermore, defendants argue that acceptance of the entire audit cannot be implied from the HCFA's acceptance of overpayments identified by the State, because the issue of late claims is governed by a different statutory scheme than the issue of overpayments. Specifically, there is no time limitation on the statutory requirement that the Secretary recover overpayments, whenever and however discovered, pursuant to 42 U.S.C. § 1396b(d)(2)(A).

Defendants also reject the argument that the DAB improperly mixed the "good cause" exception of 42 U.S.C. § 1320b–2(b) with the audit exception of § 1320b–2(a) when it held that the audit exception only applied in extreme situations. What the DAB in fact held was that the occurrence which plaintiffs described as an audit exception was simply an instance of faulty process causing a problem which could have been uncovered earlier by the State.

Defendants further contend that the DAB's interpretation that proof of "extreme circumstances" is necessary to obtain relief under the audit exception, merely amplifies and defines the terms of the statute in a reasonable manner. In so interpreting the regulation, defendants argue that the DAB was legitimately concerned with the possibility that states would rush to the courthouse arguing that they are entitled to an audit exception every time they failed to timely object. Since the DAB's decision is not an arbitrary and capricious interpretation of the statute or regulation, defendants contend that it cannot be held unlawful and that summary judgment should therefore be granted in their favor.

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The facts of this case are undisputed. In reviewing the DAB's decision, the court must engage in a two-fold inquiry to determine (1) whether the DAB's interpretation of the audit exception in 42 U.S.C. § 1320b–2(a) and its implementing regulations was reasonable and (2) whether the DAB's application of the interpretation to the facts was rational.

■■■ Courts generally will defer to an agency's interpretation of its own regulation unless that interpretation is plainly erroneous. *Falk v. Secretary of the Army,* 870 F.2d 941, 946 (2d Cir.1989); *see also Chevron U.S.A.,* 467 U.S. at 844, 104 S.Ct. at 2782. The agency's interpretation should be followed "unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *see also Chemical Manufacturers Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985). In reviewing an agency's interpretation of its own regulation, the court must determine whether Congress has "directly addressed the precise question at issue." *Chevron U.S.A.,* 467 U.S. at 843, 104 S.Ct. at 2782. If Congress has addressed the issue, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the

statute." *Id.* For the agency interpretation to be accepted, it need only be shown that it is "sufficiently reasonable." *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

Because Title XIX of the Social Security Act does not set forth the standards for review of the DAB's substantive decisions, the court must look to the standards articulated in the Administrative Procedure Act for guidance. 5 U.S.C. §§ 551 *et seq.* The pertinent portions of the APA state:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency decision. The reviewing court shall ...
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ...
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law....

5 U.S.C. § 706.

The court will first consider whether the DAB's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to 5 U.S.C. § 706(2)(A). In *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), the Supreme Court delineated the boundaries of the court's review in applying the arbitrary and capricious standard.

> A reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors, and within the scope of the authority delegated to the agency by the statute.... The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to agency expertise.

*Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 42–43, 103 S.Ct. at 2866; *see also Bersani v. Environmental Protection Agency,* 674 F.Supp. 405, 413 (N.D.N.Y. 1987), *aff'd,* 850 F.2d 36 (2d Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989).

Keeping these principles in mind, the court now turns to an examination of the issues at hand. Plaintiffs contend that the DAB's decision to deny audit exception treatment to the claimed overpayments was arbitrary and capricious as a matter of law because (1) the DAB impermissibly imposed the existence of "extreme circumstances" as a prerequisite for application of the audit exception, and, (2) by accepting the methodology of the audit, defendants accepted both the upward and downward adjustments. While plaintiffs concede that the DAB has some limited authority to interpret a statute it is charged with enforcing, they argue that the DAB sought to add a new provision by applying the extreme circumstances rationale, rather than interpret the existing provision. The court disagrees.

■ The court finds that the DAB's consideration of whether the State's tardiness in making the claim was due to an "extreme situation" was not arbitrary and capricious as a matter of law. Nothing in the statute or regulations forbids the agency from making such a determination. Sec-

tion 1320b–2(a) does not define the term audit exception. Rather, Congress gave the Secretary of HHS the authority to make, and publish rules and regulations "as may be necessary for the efficient administration of the functions with which [the Secretary] is charged under this chapter." 42 U.S.C. § 1302(a). Pursuant to that authority, the Secretary issued a regulation defining audit exception as "a proposed adjustment by the responsible Federal agency to any expenditure claimed by a state by virtue of an audit." 45 C.F.R. § 95.4. Clearly, the regulation is ambiguous in that it does not define under what circumstances a federal agency must accept or reject claimed adjustments by a state. Therefore, it is necessary and proper for the DAB to detail the regulation's application. *See Martin v. Occupational Safety and Health Review Comm'n*, — U.S. —, —, 111 S.Ct. 1171, 1173, 113 L.Ed.2d 117 (1991) (reviewing court should defer to agency's reasonable interpretation of an ambiguous regulation).

The interpretation given by the DAB does not violate the plain language of the statute or the language of the pertinent regulation. Further, the interpretation does not conflict with the intent of Congress. Plaintiffs, although spending a significant portion of their memorandum of law analyzing the pertinent statute, fail to cite any legislative history which would indicate any congressional intent contrary to the interpretation given by the DAB. It is well settled that "[i]n that process of filling 'any gap left, implicitly or explicitly, by Congress,' the court must respect the interpretation of the agency which Congress has delegated the responsibility for administering the statutory program." *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). Accordingly, the court finds that the DAB's application of "audit exception" is a permissible construction of the relevant regulation.

The court further concludes that even absent a determination that the audit exception only applies to "extreme situations," based on the language of 45 C.F.R. 95.4, the DAB's decision denying audit exception treatment to the proposed upward adjustment was not arbitrary and capricious. Both parties agree that in order to invoke the audit exception, the appropriate federal agency must "accept" the proposed audit. Plaintiffs go on to argue that defendants are required to grant audit exception treatment to those state claims (including the subject disputed claims) which are submitted within the context of an audit, provided that the substantive nature of the claims considered by the audit, the method of analysis adopted by the audit, and the accuracy of the audit's claims have been approved by defendants. The court does not agree.

The issues of overpayments and underpayments are governed by different statutory schemes. All overpayments by statute must be repaid to the federal government, no matter when they are discovered. 42 U.S.C. § 1396b(d)(2)(A)[5]; *Perales v. Heckler*, 762 F.2d 226, 227–28 (2d Cir.1985). Conversely, underpayments are subject to a two-year statute of limitations. 42 U.S.C. § 1320b–2(a). Therefore, the State cannot use the action of the Secretary to collect overpayments, which is mandated by statute, to prove that the audit which identified the overpayments was accepted in its entirety by the federal government. In addition, to affirm plaintiffs' position would be to permit the State to first label virtually any late filing an audit exception, and then permit the State to define when the federal agency has accepted the audit exception. Such an outcome would render the statute of limitations contained in § 1320b–2(a) meaningless and would undermine the intent of Congress in preventing states from filing claims in excess of two years old. In sum, the court concludes that defendants'

---

**5.** Section 1396b(d)(2)(A) states:
The Secretary shall then pay to the State ... the amount so estimated, reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter and with respect to which adjustment has not already been made under this subsection.

acceptance of the amount of downward adjustment did not necessarily imply their acceptance of the accuracy of the audit methodology and the substantive permissibility of all claims considered by the audit. As such, defendants' action in denying audit exception treatment to the subject upward adjustment was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

■ The court also concludes that the decision of the DAB was not "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Reviewing agency interpretations of statutes and regulations to insure that they are not in excess of statutory jurisdiction involves deference to the administrative determinations, unless they are plainly erroneous or inconsistent with the relevant statutes. *Rydeen v. Quigg*, 748 F.Supp. 900, 904 (D.D.C.1990) (citing *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)), *aff'd*, 937 F.2d 623 (Fed.Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992). As discussed above, the court does not find the DAB's decision to be either plainly erroneous or inconsistent with the relevant regulation.

Finally, the court concludes that the DAB did not fail to observe any procedure required by law. 5 U.S.C. § 706(2)(D). Plaintiffs have not identified any specific procedures required by law that defendants have failed to observe, and the court finds no procedural irregularities in the DAB's determination which would warrant setting aside the agency's action pursuant to 5 U.S.C. § 706(2)(D). Therefore, plaintiffs' motion for summary judgment based on defendants' violation of 5 U.S.C. § 706(2)(A), (C), or (D) is denied.

■ Alternatively, plaintiffs seek an order compelling defendants to provide affidavits explaining why the HCFA denied audit exception treatment for the subject upward adjustment. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (court may require some explanation in order to determine if agency acted within scope of its authority if bare record before the court does not disclose the factors considered by the agency or the agency's construction of the evidence); *1902 Atlantic Ltd. v. Hudson*, 574 F.Supp. 1381, 1397 (E.D.Va.1983) ("where an agency's failure to explain its rationale frustrates judicial review, a court's scrutiny of explanatory affidavits is permissible"). Specifically, plaintiffs complain that the HCFA letter of disallowance gave no specific rationale for the rejection of the proposed upward adjustment. It was not until the case reached the DAB that a rationale for the decision was set forth, and plaintiffs argue that the HCFA should be required to explain its own decision.

The court finds no basis for granting plaintiffs' request. The principles of law recited by plaintiffs are inapplicable to the case at bar because the specific decision on appeal to this court is that of the DAB, not the HCFA. A careful reading of the DAB's decision leads this court to conclude that the grounds upon which the agency acted are clearly disclosed and sustained by the record. Therefore, plaintiffs' request is denied.

### III. CONCLUSION

In summary, the DAB's decision to deny audit exception treatment to the proposed upward adjustment does not create a material issue of fact, in that no evidence has been presented to suggest that the decision was arbitrary and capricious, in excess of statutory jurisdiction, or that the DAB failed to observe procedure required by law. Giving due deference to the DAB's decision, defendants are thus entitled to summary judgment as a matter of law and their motion is hereby granted. Consequently, plaintiffs' motion for summary judgment and alternative request for explanatory affidavits from the HCFA are hereby denied. The clerk of the court is directed to enter judgment in favor of defendants and dismiss plaintiffs' complaint in its entirety.

It is So Ordered.